## NEW YORK COMMON PLEAS.

### Joseph Stouvenel and Francis Stouvenel agt. Margaret A. Stephens.

*Hearsay evidence* is admissible to show the *death of a person after a considerable lapse of time ;* but it is not receivable when the alleged death was of *recent occurrence,* and when it may fairly be supposed that *other and more satisfactory evidence* could be obtained.

*Hearsay* evidence is *intrinsically weak,* incompetent to satisfy the mind of the existence of a fact, and by its admissibility frauds may be practiced under it.

*New York General Term, December,* 1863.

Daly, Brady and Hilton, *Judges.*

Appeal from a judgment at special term entered on a report of a referee.

By the court, Daly, F. J.   The referee found, upon hearsay evidence, of a very loose kind, to the reception of which the defendant objected, that Stephens, the defendant's husband, died before the first of February, 1857.   Hearsay evidence is admissible to show the death of a person after a considerable lapse of time (*Jackson* agt. *Cody,* 9 *Cow.* 140; *Jackson* agt. *Boneham,* 15 *Johns.* 226; *Lewis* agt. *Marshall,* 5 *Peters,* 470; *Scott* agt. *Ratliffe, id.* 86), but it is not receivable when the alleged death was of recent occurrence, and when it may fairly be supposed that other and more satisfactory evidence could be obtained (*Jackson* agt. *Etz,* 5 *Cow.* 319; *Mima Queen* agt. *Hepburn,* 7 *Cranch,* 290.)   Chief Justice Marshall, in speaking of hearsay evidence, says that it is excluded not solely upon the ground that it supposes the existence of better testimony that might be adduced, but because of its intrinsic weakness—its incompetency to satisfy the mind of the existence of the fact, and the frauds which might be practiced under its cover (*Mima Queen* agt. *Hepburn, supra*), and the case now before us is a good illustration of the soundness of the rule.

The defendant was informed by several persons that her husband was dead. One of them told her that he had been found dead opposite a burying-ground in Eleventh street, in this city, and one or two others confirmed the statement. As she had been separated from her husband for several years, and as he was a very intemperate man, in the habit of lying about the streets in a state of intoxication, and had once been placed upon Blackwell's Island as a vagrant, she, putting entire confidence in the report of his death, married again, and in a week after the marriage she saw him riding in an omnibus on Broadway.

This occurred in 1856, and it was shown by the testimony of a number of witnesses that Stephens lived in this city afterwards up to January, 1857, when he left the place where he was employed by a Mr. Reed, and went off on a drunken frolic.

Hearsay evidence was received to show that he died about a month after he left the employment of Reed. His brother testified, under the defendant's objection, that a colored man told him in January or February, 1857, that Stephens was found frozen to death in an alley way up town. A witness, named Combs, under a like objection testified that he read an account of Stephens' death in the *Sun* or the *Herald* in the latter part of 1856, or in the fore-part of 1857, and other witnesses were allowed, under objection, to state what they had heard upon making inquiries respecting him, including opinions expressed as to whether he was dead or living.

This hearsay, no more reliable than that upon the faith of which Mrs. Stephens imprudently married again, was received as satisfactory evidence of the happening of an event, assumed to have occurred less than four years before the evidence was given, and was allowed to outweigh the positive statements of witnesses, that they had seen Stephens in the city, and conversed with him, long after the time when, according to this hearsay testimony, he was dead.

The witness Orr, the keeper of Jefferson market, swore positively that he saw him and conversed with him in the market six months afterwards. The witness knew him twelve years, personally, and described him as dressed up and sober.

Wood, who had known him for twenty years, also swore positively that he saw him three or four times in the winter of 1859 around Washington market, and in January, 1860, that he came into the witness's place in his shirt-sleeves, and that he (the witness) gave him a meal; and hearsay testimony was introduced on the part of the defendant to the effect that Stephens, a short time before the trial, was working upon a farm in Ulster county, in this state.

Pending the cross-examination of the witness Wood, the reference adjourned, and the witness failing to attend on the adjourned day, the plaintiff, when the defendant's testimony was through, moved to strike out the testimony of Wood, and the motion was granted. The plaintiffs then proceeded to examine witnesses, and while the case was thus with the plaintiffs the defendant tendered Wood for further cross-examination to the plaintiffs, but the referee decided that his whole testimony was to be regarded as stricken out. The witness having come in before the testimony was closed, the request that his cross-examination should be completed was a reasonable one, and should have been granted. No injury could result to the plaintiffs. They had already cross-examined the witness to a very considerable length without eliciting anything impairing his positive statement on the direct, and to punish the defendant by depriving her of the whole of the important evidence of the witness because the witness had failed to attend previously was, as I have said, unreasonable, nothing appearing on the face of the case to warrant a suspicion that he had been intentionally kept away by the defendant.

The judgment should be reversed.

HILTON, J. I agree with Judge DALY, that improper evidence was admitted by the referee respecting the death of the husband of the defendant.