ANNASTASIA CHAYKA, Plaintiff, *v.* CONRAD CHAYKA, Defendant.

Supreme Court, Special Term, Kings County, February 26, 1943.

*Peter J. Haberkorn* for plaintiff.

*Louis J. Lefkowitz* for defendant.

Ughetta, J. This action, brought pursuant to section 1134 of the Civil Practice Act, is founded on the theory that the marriage between the parties was absolutely void on the ground that a former marriage was in force when the second marriage was contracted. (Domestic Relations Law, § 6.)

The plaintiff testified that in June, 1903, at Dubra, Austria, she married one Steve Schultz, and lived with him until she came to this country in 1912. That the husband, Steve Schultz, was to follow her here, but because of the war, which began in 1914, he did not. That in 1918, while still in this country, she talked to some people from Austria, and these people told plaintiff that her husband, Steve Schultz, had died. That in 1919, believing her husband, Steve Schultz, dead, she married the defendant Conrad Chayka. That there is one issue of her first marriage, a daughter about thirty-eight years old, living in Austria. That she lived with the defendant until February, 1932, when she received a letter from her daughter in Austria telling her that her first husband, Steve Schultz, was alive. That as soon as she received the letter she left the defendant and since then has not lived with him. That in February, 1938, she received another letter from her daughter in Austria to the effect that her first husband, Steve Schultz, had died on New Year's in Jugoslavia, and in that letter the daughter requested money from the plaintiff to bury her husband, Steve Schultz. This letter was written in Russia, and, was received in evidence and marked Plaintiff's Exhibit 1. That the real reason she wants an annulment is that the defendant has another woman. A certified, photostatic copy of the marriage certificate showing the marriage of the plaintiff and the defendant, and showing that the plaintiff certified that her first husband was dead, was received in evidence as Plaintiff's Exhibit 2. The foregoing represents a summary of the pertinent evidence.

It is significant that the only proof offered by the plaintiff to show that her first husband, Steve Schultz, died in 1918, that he was alive in 1932, and that he died in 1938, was the plaintiff's testimony as to what her friends and her daughter had told her Obviously, this testimony is hearsay evidence based not on the plaintiff's personal knowledge or observation, but on what someone else said or wrote to her. (Richardson on Evidence [5th ed.] §§ 239, 244.) Such hearsay evidence is not admissible to show the death of a person when it was of recent occurrence and when it may be fairly supposed that other and more satisfactory evidence could be obtained. (*Stouvenel* v. *Stephens,* 2 Daly,

319, 26 How. Pr. 244.) A case which is particularly applicable is *Donovan* v. *Twist* (105 App. Div. 171). There, on an issue as to whether a certain person was dead, evidence that his granddaughter had received word from a third person who was still living and whose whereabouts was known, to the effect that the grandfather was dead, was held inadmissible.

In the case at bar, plaintiff's daughter, who arranged for and was present at her father's burial, could have furnished direct evidence of the material facts. The evidence could have been obtained by the issuance of a commission to the country where the daughter resided, if the plaintiff had pursued her remedies promptly and properly. She waited from 1932 until the present time to sue for an annulment, and of course the war now makes it impossible to obtain the daughter's testimony.

The law is well settled that in the case of conflicting marriages of the same spouse the presumption of validity operates in favor of the second marriage. It may also be presumed in favor of the second marriage that at the time thereof the first marriage had been dissolved, either by a decree of divorce or by the death of the former spouse, so as to cast the burden of adducing evidence to the contrary on the party attacking the second marriage. (*Matter of Dugro,* 261 App. Div. 236; *Matter of Biersack,* 179 App. Div. 916; *Fagin* v. *Fagin,* 88 Misc. 304.) The rule stated in *Romps* v. *Romps* (209 App. Div. 832) also bears directly upon the question presented here. There, in an action for an annulment, the court held that " the burden was upon plaintiff to establish that defendant's first husband was alive at the time of her marriage to plaintiff, and he cannot rely upon the presumption of life as against the presumption of innocence and validity of the marriage which he seeks to annul. (*Palmer* v. *Palmer,* 162 N. Y. 130; *Matter of Meehan,* 150 App. Div. 681; *Smith* v. *Smith,* 112 Misc. 371.) ''

The facts which the plaintiff must prove to entitle her to an annulment are also stated in *Johannessen* v. *Johannessen* (70 Misc. 361) as follows: ''This cast upon him the burden of proving the validity of the first marriage and of overcoming the presumption that the second marriage was valid. While this presumption may be rebutted by evidence of facts invalidating the marriage, such evidence must be strong, satisfactory and conclusive, although it involves proving a negative. *Senge* v. *Senge,* 106 Ill. App. 140. When a marriage has been shown (says Mr. Bishop) ' the law raises a strong presumption of its

legality — not only casting the burden of proof on the party objecting, but requiring him throughout, in every particular, to make plain against the constant pressure of this presumption the truth of law and fact that it is illegal and void.' 1 Bishop Mar., Div. & Sep., § 956. It is not sufficient to prove the illegality of the second marriage to show that at the time the husband of the first marriage was living. *McKibbin* v. *McKibbin*, 139 Cal. 448. It must be proven that not only was the first marriage valid, but that it was subsisting. *Before the marriage of the parties could be annulled it would have to be proven that the former husband was living, and also that the marriage was then in force.* Code Civ. Pro., § 1743, subd. 2. This would involve proving a negative, that is, that the former marriage had not been either dissolved or annulled by a court of competent jurisdiction.'' (Italics supplied.)

In the light of the foregoing, the court is of the opinion that plaintiff failed to establish by competent evidence that her first husband was alive when she married the defendant. Under such circumstances, the plaintiff's application for an interlocutory judgment of annulment must be denied.