ANONYMOUS, Plaintiff, *v.* ANONYMOUS, Defendant.

Supreme Court, Special Term, Bronx County, May 8, 1946.

*Alfred S. Julien* for plaintiff.

*James G. Donovan* for defendant.

SHIENTAG, J.   The husband sues the wife for an annulment of their ceremonial marriage in New York City on February 27, 1930, on the ground that at the time of this marriage a former husband of the defendant was living and that her marriage to her first husband, whom we shall call " X ", was then in full force and effect.

The defendant married X in New York City in 1919, she then being about sixteen years old.   They lived together less than six months.   X, it is claimed, disappeared and she never saw him again until the plaintiff produced him as a witness at the trial.

X testified, rather vaguely, that he recalled hearing about an annulment action instituted by his mother. The court gave the parties an opportunity to have a thorough search of the records made to ascertain if any annulment of defendant's first marriage had been granted or if any action to dissolve that marriage had been instituted. No such record was discovered.

X testified that he remarried in 1924 and that he now has three children by his second wife, the oldest being twenty-one years of age. In 1928 the defendant met the plaintiff; two years later they married in New York City. The defendant testified that before she married the plaintiff, she told him of the facts in connection with her first marriage. Notwithstanding such disclosure, however, the parties married, the plaintiff, according to the defendant's testimony, having said that he thought her first marriage " was outlawed." Significantly, however, it appears that in the application for the marriage certificate issued for her second marriage, the defendant said that she had never previously been married. The plaintiff and the defendant lived together as man and wife for over fourteen years before this action was commenced.

The question is whether the plaintiff is entitled to a decree of annulment from a court of equity. The defendant contends that the plaintiff's conduct has been " unfair, shabby and unconscionable "; that such conduct, while not constituting a true estoppel, should be given the same effect, and that, in any event, the court should leave the parties where it found them.

In the absence of statutory provision to the contrary, it was the common-law rule that a remarriage by one party already legally married was void. This was true although both parties to the second marriage may have acted in good faith and in the reasonable belief that the former spouse was dead or that the earlier marriage had been lawfully dissolved (*Williamson* v. *Parisien,* 1 Johns. Ch. 389, 393).

For a long time prior to 1922 it was provided by statute in this State that a marriage " is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless * * * 3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time." (L. 1896, ch. 272, § 3, subd. 3; *Jones* v. *Zoller,* 32 Hun 280, 283; *Stokes* v. *Stokes,* 198 N. Y. 301, 305–308.) In such event the second marriage was declared to be void only from the time its nullity was pronounced by a court of competent jurisdiction. (See, for example, L. 1896, ch. 272, §§ 3, 4.)

Prior to 1922, in the contingency covered by subdivision 3, above set forth, it was the law that " The first marriage is suspended, or, * * * it is ' placed in abeyance,' but it is not reinstated by the return of the absentee, because the second marriage becomes void only from the time that it is so declared by a competent court. * * * The first marriage ceases to be binding until one of the three parties to the two marriages procures a decree pronouncing the second marriage void." (*Gall v. Gall*, 114 N. Y. 109, 120.) No matter how long the missing spouse had absented himself, when he did return the second marriage could be annulled by him or at the instance of either party thereto.

In 1922 the law was changed primarily for the protection of the person whose first spouse had absented himself or herself for five successive years. The so-called Enoch Arden statute was enacted and took effect March 25, 1922 (L. 1922, ch. 279). It repealed the old law on the subject. Instead of having the second marriage a voidable one where the first spouse had absented himself for five successive years without being known to be living, the second marriage was declared void except that the remaining spouse could obtain a dissolution of her first marriage by following the procedure and complying with the conditions, outlined in the new statute, section 7-a of the Domestic Relations Law. That statute authorizes the dissolution of a marriage on the ground of the absence of a spouse for five successive years then last past, without being known to the petitioner to be living during that time, where the petitioner believes the absent spouse to be dead, and proves that a diligent search has been made to discover evidence showing that such spouse is living and that no such evidence has been found. If those conditions are satisfied, the court in an appropriate proceeding is given power to make an order dissolving the marriage.

When an order is made under section 7-a dissolving a marriage on the ground of unexplained absence, a remarriage is valid and remains so notwithstanding the later return of the absent spouse or the discovery thereafter that he is still alive.

Where, however, after 1922 a party to a marriage whose spouse has absented himself for five successive years remarries without having obtained a dissolution under section 7-a, the remarriage is void, not merely voidable, as it was under the old law.

There still remains, however, the protection afforded by the common-law presumption of death after the unexplained absence of a person for seven successive years (*Butler* v. *Mutual Life Ins. Co.*, 225 N. Y. 197, 203; Richardson on Evidence [6th

ed.], § 79). There is, likewise, the even stronger common-law presumption of the validity of the second marriage, which will not be overcome by mere proof of a prior marriage of one of the parties. The inference of the continuity of the first marriage yields to the stronger presumption of the validity of the second marriage (*Matter of Dugro*, 261 App. Div. 236, affd. 287 N. Y. 595; *Smith* v. *Smith*, 194 App. Div. 543, 551–553; *Matter of Meehan*, 150 App. Div. 681, 683; 2 Schouler on Marriage, Divorce, Separation and Domestic Relations [6th ed.], § 1252).

The fact that section 7-a was not resorted to does not change the operation of the foregoing presumptions or the burden of proving the invalidity of the second marriage, which is always upon the party raising that issue (*Matter of Kotlik*, 153 Misc. 355). There also remains the exemption from criminal punishment for bigamy in the case of a " person whose former husband or wife, has been absent for five years successively then last past, without being known to him or her within that time to be living, and believed by him or her to be dead ". (Penal Law, §§ 340, 341, 343. This exemption, to be sure, does not render a second marriage valid.)

However, the return of the absent spouse or proof that he is still alive completely nullifies the common-law presumptions. By not resorting to section 7-a and remarrying without proof of the actual death of her first husband, the defendant took the risk that he might thereafter reappear or might be discovered to be alive. She took her chances when she entered upon her second marriage, and while the plaintiff's conduct is, as she contends, " shabby and unconscionable ", she has only herself to blame for the predicament in which she now finds herself. Marriage is not only a civil contract; it is a status to which the State is a party. Her second marriage being void, the doctrine of " clean hands " has no application, nor may any phase of estoppel be invoked. The hardship or inequity of a particular situation must yield to the paramount public policy of the State (3 Nelson on Divorce and Annulment [2d ed.], p. 291). The fact that the defendant thought her first marriage was outlawed and that the plaintiff may have acquiesced in this belief and lived with her thereafter for many years is without legal significance. For the court to leave the parties where it found them would benefit no one. The second marriage is void and either party thereto is entitled to such an adjudication in our courts.

Judgment is accordingly directed in favor of the plaintiff for the relief demanded in the complaint. Settle findings of fact, conclusions of law and interlocutory decree in accordance with the foregoing determination.