HARRY RUDYK, Appellant, v. JESSIE RUDYK, Respondent.

MEMORANDUM BY THE COURT. Action by a husband to annul his marriage with defendant, and for a judgment declaring null and void a Mexican divorce procured by a prior wife. Defendant wife counterclaims for a separation. The court dismissed the complaint, granted a separation on the counterclaim, awarded custody of a child to the wife, and made provision for the support of the wife and child. Plaintiff appeals from the judgment.

Judgment affirmed, with costs.

WENZEL, J. (dissenting). The plaintiff married Adele Agurkis on December 24, 1941, while he was in the armed service. Subsequently, on April 9, 1943, while he was at an army camp in readiness for embarkation overseas, Adele procured a Mexican decree purporting to divorce him, without personal service of process and without appearance or answer by him. He first learned of the decree when he received a copy abroad about August following. He was not returned to the United States until the end of July of 1945, when he received his discharge from the service.

Upon his repatriation, he began to see the defendant, who had not only known him and his family previously but also his wife. The testimony of the plaintiff, that just a few months thereafter, in November of 1945, defendant told him that a child was on the way and that she wanted him to marry her, was undenied. He also testified that he had told her that he could not marry because his wife's Mexican divorce would not be recognized in New York, and that she then said that they should not mention the Mexican decree (meaning apparently the fact of his marriage to Adele when they would apply for a marriage license), that they should marry for the sake of the child, and that their marriage could be annulled after the birth. The version of the defendant was merely that he told her that their marriage was legal. She did not deny the truth of the plaintiff's testimony that his status was recorded in the application for their marriage license as " Single " despite her knowledge that he was not.

They married on November 9, 1945, but never established a home, continuing to live separate from each other. There was dispute in the testimony as to the frequency of their meetings after the marriage, but the plaintiff's testimony that he stopped seeing her altogether at about the end of the year is undisputed. Their baby was born on May 22, 1946.

This action for an annulment and a declaratory judgment to the effect that Adele's Mexican divorce was of no force in New York was commenced in December of 1949. The judgment under review dismissed the complaint and granted the defendant a separation on the grounds of abandonment and non-support, with provisions for custody of the child and for support of the defendant and the child, upon her counterclaim.

The presumption in favor of the legality of a marriage is a strong one indeed, and where a person has married twice, each time to a different spouse, the presumption favoring the later marriage eclipses the presumption of the continuance and subsistence of the former marriage. To succeed in overcoming this powerful presumption, proof of the survival of the former spouse and that the first marriage had not been terminated by annulment, divorce or dissolution is requisite, even though that might involve proof of a negative. (*Matter of Dugro*, 261 App. Div. 236, affd. 287 N. Y. 595.) The majority of this court and I are not in disagreement as to that. Further, the difference of opinion does not lie in the question of the sufficiency of the proof insofar as it had to do with Adele's being alive at the time of the marriage of the parties to this action and with the fact that her marriage to the plaintiff had not been judicially terminated. The Special Term correctly determined that her Mexican divorce was not cognizable in New York.

However, the defendant established that Adele herself, before espousing the plaintiff, and in February of 1937, had married one Bernard J. Sullivan. If this 1937 marriage was in force at the time that she married the plaintiff, then Adele and the plaintiff were never lawfully married and the plaintiff's marriage to the defendant would be without taint. On the other hand, if not, then the plaintiff and Adele were husband and wife and his attempted marriage to the defendant was void. The majority and I are not in disagreement on this either. The difficulty lies in where to cast the burden of establishing the status between Sullivan and Adele as of the time in question.

If the burden is to be saddled upon persons circumstanced as the plaintiff finds himself, they would indeed be in a sorry state if they are not able to turn up sufficient evidence to establish that status. The majority here say that, in the absence of such proof, it is correct to find that the plaintiff and the defendant are husband and wife. Nevertheless, if the plaintiff also found himself in litigation, the purpose of which was to establish his relationship with Adele, under the same proof that has been adduced in this case, and in the absence of proof with respect to the subsistence of the Sullivan marriage, it would necessarily follow that he would have to be declared the husband of Adele, she being entitled to the same presumption as this defendant as to the validity of her marriage. Although it is true that this plaintiff cannot find himself in such position, at the instance of Adele, because she is no longer alive, having died in January of 1946, we are concerned with a rule of law as to burden of proof which would be applicable in any case in which the status of this plaintiff and Adele, or persons similarly situated, might be litigated.

It is a mistake to protect the presumption in favor of the latest marriage with so heavy an armor of resistibility as to result in the possibility of our courts decreeing that a person has two lawful spouses at the same time. As was said in *Neely* v. *Tennessee, G. & A. R. R. Co.* (145 Ga. 363, 364), " a man can not have two lawful wives at the same time, by presumption or otherwise; and no presumption of innocence, or the like, can effect that result." (See, also, *Smith* v. *Fuller*, 138 Iowa 91, 97.)

*Matter of Meehan* (150 App. Div. 681), *Matter of Biersack* (96 Misc. 161, affd. 179 App. Div. 916), and *Matter of Dugro* (*supra*) do not dictate affirmance. The *Meehan* case (*supra*) was a contest to determine the right to administer the estate of a decedent, one Meehan, which would turn upon whether his children were legitimate. As here, marriages by a man, Meehan, to two women were involved, with evidence which would at least suggest that the first wife herself had been married to another previously. The case was decided in 1912, and the court noted that the presumption in favor of a later marriage had not been applied previously in this State and was not content to rest its decision baldly on the presumption but on the broader ground that, in addition, there had been uninterrupted cohabitation by the parties to the later marriage for more than twenty years; that that marriage had been recognized by friends, relatives and acquaintances, and that children were born, and further in view of the conduct of the alleged former wife, the fact that the attack on the later marriage was not made until after a lapse of thirty years and the death of the parties, and that the attack was not by any of the parties to the marriage themselves, but by relatives who would deprive the children of their inheritance by branding them as illegitimates. Further, there was testimony which suggested that Meehan had obtained a divorce from his first wife, and the Surrogate had found that their marriage had been dissolved prior to the date of his second marriage. While the court did indeed observe that Meehan's alleged first marriage might have been invalid because his first wife might have had a husband living, that was not a ground of the decision.

In *Matter of Biersack* (*supra*), the crucial issue also was the legitimacy of a child of a decedent, upon which would depend the child's right to compel the administratrix to account. There, it was the child's mother, Louise Biersack, who had been twice married, the child being born of the second marriage. The first took place on June 15, 1902, and the first husband, Bachman, abandoned Louise six days later. The second was a common-law marriage, declared in 1903 or 1904, and was entered into by both parties under the belief that the first husband was dead. He was not. The Surrogate found a lawful marriage between Louise and the decedent in 1908, deeming that that marriage had been merely voidable, and not void, as he was permitted to do under the extant statutes, in view of the first husband's absence for more than five consecutive years; and in reliance on the presumption in favor of validity. Although there was no evidence that Louise and Bachman had been married before they married each other, the court stated that whoever would attack the latest marriage must even negative such possibility, remote and unsuggested as it may be. Again, the primary ground of decision was the failure to prove the continuance of the relationship created by the first marriage, and not that the parties thereto had not been proved free to enter into it.

The *Dugro* case (*supra*), in which the court relied on the *Meehan* and *Biersack* cases (*supra*), and which incidentally involved only two marriages, likewise concerned itself with the legitimacy of a child and her right to participate as a beneficiary. Cases are now legion in which courts have upheld property rights and rights to compel support when, under similar facts, they would not uphold the personal status of a person as a lawful spouse. The only case that has come to attention in which three marriages were involved and the personal relationship of the parties to the latest fixed by the court upon application of the presumption and a rule for placement of the burden of overcoming it is *Brownell* v. *Brownell* (74 N. Y. S. 2d 136). An annulment of marriage was granted on the ground that the defendant wife had a former

husband living, one Clayton, when she married the plaintiff in 1915. The court held that, upon proof of the Clayton marriage in 1912 and that Clayton was still alive, the presumption favoring the later marriage was successfully rebutted, and that the defendant then had the burden of establishing her claim that the Clayton marriage was void because Clayton himself had a wife by a still earlier marriage.

Treatment of the question as was given in the *Brownell* case (*supra*) accords to the presumption favoring the latest marriage reasonable force and yet does not work the anomalous result of sanctioning a status of having two lawful spouses at the same time.

So far as the evidence in the instant case is concerned, with respect to establishing judicial termination of the Sullivan marriage, the rule is that it is not necessary to look to every jurisdiction where a proceeding for such purpose might possibly be had, but only where the parties resided or where it might reasonably be expected they would have brought such proceeding (14 A. L. R. 2d 54 *et seq.*, § 22; 35 Am. Jur., Marriage, § 218, pp. 323–324). In view of the evidence as to the place of residence of Adele at the times of her marriages, to Sullivan and the plaintiff, in Astoria, New York City, I am in agreement with the Special Term to the extent that the certificates of the five county clerks within the City of New York to the effect that they had no record of a judicial termination of the Sullivan marriage constitute proof that no judgment to such effect was entered in any action commenced by Adele. However, there was no evidence as to Sullivan's residence after the marriage, and so it may not be said that he himself did not bring a successful action elsewhere for such purpose. There was no proof that he was no longer alive at the time that Adele married the plaintiff.

To recapitulate, it is my view that the presumption in favor of the marriage between the parties to the action was overcome by the plaintiff's proof that he had a wife living, Adele; that thereupon a presumption in favor of the validity of his marriage to Adele should be given force; and that the burden of overcoming that was upon the defendant and that she failed to meet it. The judgment should be modified so as to grant the plaintiff an annulment and deny the defendant a separation. The provisions for custody and for support may stand.

Johnston, Acting P. J., Adel, Sneed and MacCrate, JJ., concur in Memorandum by the Court; Wenzel, J., dissents, with opinion, and votes to modify the judgment by granting plaintiff an annulment and denying defendant a separation; the provisions for custody and support to stand.

Judgment affirmed, with costs. No opinion. [198 Misc. 260.]