**Elizabeth DOLAN, Appellant,**

v.

**Anthony CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.**

**No. 490, Docket 31153.**

United States Court of Appeals
Second Circuit.

Argued June 8, 1967.

Decided July 18, 1967.

---

Richard Owen, New York City (Morton J. Turchin, New York City, of Counsel), for appellant.

Howard L. Stevens, Asst. U. S. Atty. (Joseph P. Hoey, U. S. Atty., Eastern District of New York), for appellee.

Before MOORE, FRIENDLY and ANDERSON, Circuit Judges.

FRIENDLY, Circuit Judge:

Elizabeth Dolan brought this action in the District Court for the Eastern District of New York under 42 U.S.C. § 405 (g), to review a decision of the Secretary of Health, Education and Welfare which denied her application for insurance benefits as the widow of John J. Dolan, 42 U.S.C. § 402(e). Section 216 (c) of the Social Security Act, 42 U.S.C. § 416(c), defines "widow" as the surviving wife of an insured individual; under § 216(h) (1) (A) of the Act the test is whether "the courts of the State in which such insured individual * * was domiciled at the time of death," here New York, "would find that such applicant and such insured individual were validly married * * * at the time he died." The Hearing Examiner thought that on the evidence here they would but the Appeals Council disagreed and this action followed. Both parties having moved for summary judgment, the District Court granted the Secretary's motion; we think it should have granted Mrs. Dolan's and so order.

It is undisputed that the claimant married Dolan on May 14, 1914. A son, John Howard, was born of the marriage. Three years later Dolan left for Peru to work as an electrician. He returned in 1920 or 1921, stayed for six months, then renewed his employment contract and took his wife and son with him to Peru.

Since Mrs. Dolan did not like the climate, she and the son came back to New York, where Dolan joined them in 1925 or 1926. A year later he returned to South America. For the first year of his absence they received news and support from him; when these ceased, Mrs. Dolan inquired about her husband and was told by his employer that Dolan had left its employ and his whereabouts were unknown.

Having little or no money Mrs. Dolan and her son lived for a time with various members of her family. In the mid-1930's she became acquainted with James Reilly, an engineer for the Long Island Railroad, and took up living with him in a home he provided for her and John Howard. Dolan returned to New York in 1936 and got in touch with his son. For a year and a half they worked together in an art gallery but Dolan made no effort to disrupt the *ménage*; in fact he did not see his wife. In his employment and social security forms he listed himself as "single"—not "divorced"—and named John Howard Dolan, described as a "nephew," as his beneficiary, as the son knew. John Howard testified that during this period his father never said he had gotten a divorce from Mrs. Dolan; "he still felt that he was married to her but he was just separated," and he told the people at the art gallery that he was separated and that John Howard was the son of the marriage. John Howard lost touch with his father in 1939. Three years later Reilly and Mrs. Dolan decided upon matrimony. The application for a license recited she was a widow, and a ceremony was performed in St. Patrick's Cathedral. Mrs. Dolan testified she thought that after seven years of separation without support she was free to remarry; the statement as to Dolan's death, acknowledged to be without basis, is understandable in view of the parties' desire for a Catholic religious ceremony. Reilly died in 1949 and Mrs. Dolan, representing herself to

be his widow, obtained from the Railroad Retirement Board the lump sum annuity payable under 45 U.S.C. § 228e(f) (2). Two years later Dolan appeared at her home, stayed overnight on several occasions and finally took up living there and contributing to the support of the household. After his death the son claimed a lump sum payment for Dolan's burial expenses under 42 U.S.C. § 402(i) as a nephew, the role in which his father had cast him. The application stated that Dolan had been married in 1913 to an unknown person and that the marriage had ended in divorce, the date and place of which were also unknown. The son collected the pay due to Dolan at the date of death, making an affidavit that he was a nephew and the sole living relative.

Mrs. Dolan denied she had ever initiated or received notice of a proceeding for divorce, and a search of the County Clerk's records of Bronx, New York and Queens Counties covering the years 1912 to 1942 disclosed no evidence of a divorce or annulment.[1] When her claim as Dolan's widow under the Social Security Act led the Railroad Retirement Board to seek recovery of its payment to her as Reilly's, she acknowledged her indebtedness but pleaded inability to repay; the Retirement Board took no action, see 45 U.S.C. § 228i(c).

If we were to look solely at the record, we could not find that the evidence supporting the Secretary's decision "is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed" to his view, Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951), the standard here applicable. The credibility findings of the Hearing Examiner, who saw and heard Mrs. Dolan and her son, are entitled to great weight, id. at 496, 71 S.Ct. 456, 465, and the factual matters relied on by the Appeals Council for its contrary view are unimpressive.

---

1. Although the record is not absolutely clear on this point, it appears that aside from the time she spent in Peru, Mrs. Dolan always resided in one of these three boroughs of New York City.

We are unable to join the Council in finding significance in Dolan's statements that he was single or unmarried when these were false on any view; rather they tend against the claim he was divorced since there would have been no need for him thus to lie if that had been the fact. In re Terry's Estate, 32 Misc. 2d 470, 222 N.Y.S.2d 865 (Surr.N.Y.Co. 1961); cf. Rudyk v. Rudyk, 198 Misc. 260, 264, 98 N.Y.S.2d 258, 262 (Sup.Ct. Queens Co. 1950). Reliance on the son's statements that Dolan was divorced and had no other living relative, made in collecting Dolan's social security death benefits and back pay, is similarly misplaced when the same statements made the known false averments that Dolan had married an unknown person and that the son was a nephew; moreover the Trial Examiner evidently believed John Howard's testimony that his father never said he had been divorced, and had in fact introduced his son at the art gallery with the explanation that he was only separated from his wife. Mrs. Dolan's representing herself as Reilly's widow in collecting his railroad retirement benefits, while somewhat more probative, also falls in place if her testimony that she thought herself entitled to remarry is credited. The slender evidence that claimant continued to be known as Mrs. Reilly after Dolan's reappearance is no more persuasive. It is apparent to us that the Hearing Examiner had a much better "feel of the case" of these poor and unlearned people, see Cone v. West Virginia Pulp & Paper Co., 330 U.S. 212, 216, 67 S.Ct. 752, 91 L.Ed. 849 (1947), than did the Appeals Council.

The Council relied heavily on what it characterized as "a strong presumption in favor of the validity of a second or subsequent marriage" recognized by the New York courts which, in its view, "can be rebutted only by evidence demonstrating that the prior marriage was still in effect at the time of the later marriage." Examination of the New York decisions convinces us that both the Council and the District Court considerably overestimated the demonstration New York would require in a case like this.

The limited character of the presumption appears clearly enough in the fountain head of New York law on this subject, In re Meehan's Estate, 150 App.Div. 681, 135 N.Y.S. 723 (1st Dept. 1912), a contest for letters of administration between children of a second marriage and more distant relatives. In upholding the second marriage the court emphasized the nature of the contest as well as the strong public policy favoring legitimacy. It also noted that no evidence had been offered to prove that the first marriage was not dissolved; in fact, there was "testimony which suggests that Meehan obtained a divorce from her [the first wife], and the surrogate found that their marriage was legally dissolved prior to * * *. [the second wedding]." 135 N.Y.S. at 724. The court specifically declined to rely on the presumption, applied in some other jurisdictions, that in the absence of contrary evidence the first marriage will be deemed to have been dissolved. Instead, it rested "decision on a somewhat broader ground," stating that each case must stand on its own facts and only when the proof is insufficient for a decision will the law indulge in presumptions, and holding that where a ceremonial marriage is followed by a long period of cohabitation and the birth of children and the parties are dead, a person not claiming under a prior marriage bears a heavy burden of proving invalidity of the second marriage even to the extent of proving the negative that the first marriage was not dissolved. This statement is enough to show in how many respects the instant case differs from *Meehan*.

The Second Department has taken an equally limited view of the presumption, in a case more appealing for upholding the second marriage than this one. In re Bauer's Will, 278 App.Div. 658, 102 N.Y.S.2d 577 (2d Dept. 1951), was a contest between the first and second husbands which the surrogate had decided in favor of the latter on the basis

of the presumption and without a trial. The Appellate Division reversed, stating that under the facts already of record "and particularly in the absence of issue, the presumption of the validity of the second marriage is not so strong as to require the appellant to adduce express proof that all of the contingencies which would render the second marriage valid had not eventuated," and that "[a]ppellant had sufficiently rebutted the presumption of validity attending the second marriage by showing that decedent had entered into a prior marriage and that the husband of that prior marriage was alive at and after the second marriage had been entered into, at least for the purpose of presenting a question of fact for decision. It was also shown indisputably that the decedent had falsified in executing her application for the second marriage license." 102 N.Y.S.2d at 578. The court further said that the second marriage would have to be declared invalid if it were proved that decedent admitted she had never been divorced and—although this would seem irrelevant—her second husband knew of this. Here Dolan was alive at the time of the second marriage, Mrs. Dolan "had falsified in executing her application for the second marriage license" by claiming to be a widow, and Dolan's false declarations that he was single or unmarried and his statements to his son and his co-workers at the art gallery came close to the Appellate Division's prescription of evidence that would require the validity of the first marriage to be upheld.

A number of fairly recent New York decisions, some rather similar to Mrs. Dolan's on their facts, have held the presumption rebutted and the second marriage invalid because of a prior subsisting marriage. In re Lancaster's Estate, 30 Misc.2d 7, 209 N.Y.S.2d 395 (Surr.N.Y.Co.1960), is an example. In a proceeding by the Public Administrator alleging that the distributees of a deceased woman's estate were unknown, the objection of the alleged surviving spouse was sustained. Evans, the objectant, married decedent in 1916 and lived with her for twenty years. He then contracted tuberculosis and was a patient in the Los Angeles Veterans Administration hospital until 1944. On his return to New York, his wife said she had divorced him and married one Lancaster; relying on this, he also remarried. In her application for the license to marry Lancaster, decedent falsely stated she had never been married and had changed her name to Evans in 1916. The court held that the presumption of the validity of the Lancaster marriage was rebutted and the continuing validity of the Evans marriage was established through this evidence supplemented by Evans' testimony that he never instituted dissolution proceedings anywhere and was never served with any papers in an action brought by decedent, records of the five New York City boroughs showing that the decedent had never instituted an action in the city, and city records showing that decedent was a resident continuously from 1936 to her death. The only difference between the cited case and ours is that while Mrs. Dolan testified that she never brought suit or was served with papers, New York City records are not compelling evidence as to her husband who for many years lived outside New York, although the validity of any divorce obtained by him without notice would be highly questionable. Even this distinction would not cover In re Terry's Estate, 32 Misc.2d 470, 222 N.Y.S.2d 865 (Surr.N.Y.Co.1961), a contest for letters of administration between two alleged wives. Decedent married the first wife in New York in 1926, left her in 1931, and never supported her thereafter; he married the second wife in New Jersey in 1945 and lived with her until his death in 1961. The first wife testified she never instituted divorce proceedings against decedent and never received papers in any action by him. They both resided in New York since 1926 except for his residence in New Jersey two months prior to his second marriage there. Although the opinion did not mention a record search, the

court held the first marriage to be still valid, considering the presumption of the validity of the second marriage to have been overcome by the above evidence and by decedent's falsely marking the box on his application for his second marriage license denoting that he was single and not the one denoting divorce. The evidence of continued validity of Mrs. Dolan's first marriage is as strong as in *Terry* and this case does not involve the countervailing consideration there present that a decision for the first wife operated to disinherit the second.

Another case which strongly supports Mrs. Dolan's claim, not only because of its clear language as to the weakness of the presumption but also because it held the first marriage valid despite the interests of a third wife and her offspring is in In re Carr's Estate, 134 N.Y.S.2d 513 (Surr.Chautauqua Co. 1953), aff'd, 284 App.Div. 930, 134 N.Y.S.2d 280 (4th Dept. 1954). The court said the presumption operates only where the court deems it necessary to support the legality of a subsequent marriage, and even then only "in the absence of tangible evidence to the contrary." Although the presumption is particularly strong in cases of heirship and legitimacy of children, "[a]ttendant facts and circumstances bear on the effect to be given to the presumption in given cases, as each case is dependent on its own facts and the inferences to be drawn therefrom." 134 N.Y.S.2d at 517. The presumption is not resorted to unless the actual evidence is inadequate for determining the question: "Here one of the parties concerned [the claimant] in the conceded first valid marriage is living and it cannot be presumed in order to validate the latter marriage that the former has been dissolved as against her express declaration that it has not been dissolved. On the contrary, it must follow, in the absence of tangible evidence to the contrary, that it is to be treated as continuing and subsisting and that the burden of establishing its dissolution is on the one asserting it." Id. at 518. The court observed, in words equally applicable here, that

it "should not 'close its eyes' or 'fail to apply common sense in an effort to cloak with respectability a relationship [a subsequent marriage] which is not entitled to that protection.'"

Finally a decision affirmed by New York's highest court is also favorable to Mrs. Dolan both in its holding and in its language, particularly in light of the harshness of the result by which the first marriage was there held to be subsisting and the subsequent marriage void, Anonymous v. Anonymous, 186 Misc. 772, 62 N.Y.S.2d 130 (Sup.Ct.Bronx Co.1946) (Shientag, J.), aff'd sub nom. Ragione v. Ragione, 274 App.Div. 752, 79 N.Y.S. 2d 918 (1st Dept. 1948), aff'd, 300 N.Y. 655, 90 N.E.2d 899 (1950). The woman (W) married her first husband (F) in 1919, she being 16 years old. Within six months F disappeared, never again to be heard from until the trial where the second husband (S) produced him as a witness. F remarried in 1924 and had three children; in 1930 S married W with full knowledge of her prior marriage both parties thinking the first marriage was "outlawed." Sixteen years later S was granted an annulment. The court described the presumption favoring the second marriage as a mere burden of proof on the one attacking the marriage's validity. "However, the return of the absent spouse or proof that he is still alive completely nullifies the common law presumptions. By not resorting to § 7-a [the Enoch Arden statute] and remarrying without proof of the actual death of her first husband, the defendant took the risk that he might thereafter reappear or might be discovered to be alive. She took her chances when she entered upon her second marriage * * *." 62 N.Y.S.2d at 133. As to testimony by the first husband that he vaguely recalled hearing about an annulment action instituted by his mother, "The court gave the parties an opportunity to have a thorough search of the records made to ascertain if any annulment of defendant's first marriage had been granted or if any action to dissolve

that marriage had been instituted. No such record was discovered." Id. at 131.

■■ In contrast to these cases holding the presumption to have been rebutted, the decisions that have held the subsequent marriage to be valid on the basis of the presumption are explicable in terms of effectuating a particular public policy such as upholding legitimacy, favoring the participation in the decedent's estate of one who lived with him as his spouse, and preserving the validity of a marriage where no strong public policy would be served by doing otherwise. E. g., Meehan, supra; Barker v. Barker, 172 App.Div. 244, 158 N.Y.S. 413, 417 (2d Dept. 1916), overruled on another issue, Matter of Moncrief's Will, 235 N.Y. 390, 397, 139 N.E. 550, 27 A.L.R. 1117 (1923); Smith v. Smith, 194 App. Div. 543, 185 N.Y.S. 558 (1st Dept. 1920); In re Tompkins' Estate, 207 App. Div. 166, 201 N.Y.S. 696 (1923); Romps v. Romps, 209 App.Div. 832, 204 N.Y.S. 803 (2d Dept. 1924); In re Tuttle's Estate, 234 App.Div. 1, 254 N.Y.S. 65, 71 (2d Dept. 1931), aff'd, Conklin v.

Tuttle, 260 N.Y. 663, 184 N.E. 136 (1932); In re Dugro's Will, 261 App. Div. 236, 25 N.Y.S.2d 88 (1st Dept. 1941), aff'd, 287 N.Y. 595, 38 N.E.2d 706 (1941); Apelbaum v. Apelbaum, 7 A.D.2d 911, 183 N.Y.S.2d 54 (2d Dept. 1959) (alternative holding); Esmond v. Thomas Lyons Bar & Grill, 26 A.D.2d 884, 274 N.Y.S.2d 225 (3d Dept. 1966). We have found no decision of a New York appellate court which declared a prior marriage to have been dissolved and a subsequent one valid where this would have had the effect of disinheriting a spouse of the earlier marriage without any offsetting advantage in terms of the legitimacy of children or the sharing in the estate by the spouse or children of the second marriage.[2] Mindful of Chief Judge Cardozo's admonition to beware "the presumption * * * gone mad," Matter of Findlay, 253 N.Y. 1, 13, 170 N.E. 471 (1930), we are satisfied that in a case like the present the only force New York would give it would be to place on Mrs. Dolan the burden—here amply satisfied—of coming for-

2. Lower court decisions upholding the second marriage on the basis of the presumption can be explained either in terms of protecting legitimacy of offspring, see, e.g., In re Biersack, 96 Misc. 161, 159 N.Y.S. 519 (Surr.Kings Co.1916), aff'd, 179 App.Div. 916, 165 N.Y.S. 1077 (2d Dept. 1917); Kopit v. Zilberszmidt, 35 N.Y.S. 2d 558 (Sup.Ct.N.Y.Co.1942); Rudyk v. Rudyk, 198 Misc. 260, 98 N.Y.S.2d 258 (Sup.Ct.Queens Co.1950), aff'd, 278 App. Div. 837, 104 N.Y.S.2d 491 (2d Dept. 1951); Frelingstad v. Frelingstad, 134 N. Y.S.2d 63 (N.Y.City Dom.Relat.Ct.1954); In re Goethie's Will, 9 Misc.2d 906, 161 N.Y.S.2d 785 (Surr.Westc'tr Co.1957); McCarter v. McCarter, 27 Misc.2d 610, 208 N.Y.S.2d 876 (Sup.Ct.Kings Co.1960), of protecting the right of the second spouse to be supported by her partner or to share in his estate, see, e.g., Johannessen v. Johannessen, 70 Misc. 361, 128 N.Y.S. 892 (Sup.Ct.N.Y.Co.1911); In re Salvin's Will, 106 Misc. 111, 173 N.Y.S. 897 (Surr.Kings Co.1919); In re Callahan's Estate, 142 Misc. 28, 254 N.Y.S. 46 (Surr.Kings Co.1931), aff'd, 236 App. Div. 814, 259 N.Y.S. 987 (2d Dept.1932), aff'd, 262 N.Y. 524, 188 N.E. 48 (1933); In re Smidt's Will, 162 Misc. 596, 295 N. Y.S. 227 (Surr.Kings Co.1937); Kopit,

supra; Cavanaugh v. Valentine, 181 Misc. 48, 41 N.Y.S.2d 896 (Sup.Ct.Kings Co.1943); In re McNell's Estate, 66 N. Y.S.2d 217 (Surr.Kings Co.1943), appeal dismissed, 272 App.Div. 817, 934, 70 N. Y.S.2d 422 (2d Dept.1947); Spann v. Spann, 53 N.Y.S.2d 582 (Sup.Ct.Kings Co.1945), aff'd, 269 App.Div. 753, 54 N. Y.S.2d 727 (2d Dept.1945); Frelingstad, supra; In re Foote's Estate, 5 Misc.2d 58, 160 N.Y.S.2d 85 (Surr.Westc'tr Co. 1957); McCarter, supra, or of preserving the validity of a marriage where no reason to do otherwise, such as preserving legitimacy or rights to support of a competing spouse, existed, e.g., Chayka v. Chayka, 179 Misc. 979, 41 N.Y.S.2d 487 (Sup.Ct.Kings Co.1943); DiClaudio v. DiClaudio, 205 Misc. 532, 132 N.Y.S. 2d 602 (Sup.Ct.Bronx Co.1954), aff'd, 285 App.Div. 1139, 142 N.Y.S.2d 365 (1st Dept.1955). In many of these cases there was no proof at all tending to negative the dissolution of the first marriage by death or divorce or either, e.g., Johannessen; Kopit; Chayka; Cavanaugh; McNell; Spann; DiClaudio; Frelingstad; Foote, all supra. See also Brownell v. Brownell, 74 N.Y.S.2d 136 (Sup.Ct.N.Y.Co.1947).

ward with evidence reasonably supporting the continuity of the first marriage. Only to attain important human values do the New York courts extend the presumption of validity of a subsequent marriage beyond the logical core that most people do not knowingly commit bigamy; we are confident they would be surprised to find it invoked by a government agency to deny benefits to an old lady convincingly shown to have remained the widow of a first marriage when no spouse or child of the second can be adversely affected. Cf. Dondero v. Queensboro News Agency, Inc., 270 App.Div. 279, 281, 60 N.Y.S.2d 140, 141 (3d Dept. 1946) (concurring opinion).

The summary judgment in favor of the defendant is reversed, with instructions to enter judgment in favor of the plaintiff.