**Laura J. NICHOLS, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary of Health, Education and Welfare, Defendant.**

**No. P–2944.**

United States District Court
S. D. Illinois, N. D.

Oct. 3, 1968.

Boyd F. Goldsworthy, Goldsworthy & Fifield, Peoria, Ill., for plaintiff.

Richard E. Eagleton, U. S. Atty., Peoria, Ill., for defendant.

## DECISION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause arose upon a complaint to review a final decision of the defendant, Secretary of Health, Education and Welfare, denying plaintiff's claim for old-age social security benefits. It is now before the Court upon cross motions of the respective parties for summary judgment.

Plaintiff's claim of her entitlement to benefits rested upon the payment of FICA taxes for her account upon moneys which she received from three of her brothers in the years 1964 to 1967, inclusive. She filed her claim on January 4, 1966.[1] That claim, and a subsequent request by plaintiff for redetermination, were both denied by the Secretary. That denial was based upon the Secretary's determination that no valid employer-employee relationship had existed between plaintiff and her brothers, and that, therefore, she was not an insured individ-

ual within the meaning of the Social Security Act. 42 U.S.C. § 410(a).

Plaintiff filed a timely request for a hearing to review that determination. Plaintiff and a brother, David Brashear, were the only witnesses who testified before the hearing examiner upon the ensuing hearing. Documentary evidence, received and incorporated in the record by the examiner, included Domestic Service Questionnaires signed by plaintiff and a second brother, Paul Brashear, on January 4, 1966.

On April 21, 1967, the hearing examiner issued his decision finding that a valid employer-employee relationship had existed between plaintiff and her brothers, that plaintiff was a fully insured individual within the meaning of the Act, 42 U.S.C. § 410(a), and that she was entitled to the benefits claimed, effective as of April 1, 1967.

Upon its own motion, the Appeals Council of the Social Security Administration reviewed the decision of the hearing examiner. On July 28, 1967, the Council issued its decision, reversing the hearing examiner, upon its findings that no bona fide employer-employee relationship had existed, that plaintiff had received no "wages" for social security purposes, and that she was not entitled to receive the benefits which she claimed.

That decision became the final decision of the Secretary which is now before this court for review. 42 U.S.C. § 405(g).

The Court's review is subject to the established rule that the decision of the agency must be sustained if it is supported by substantial evidence. Brunenkant v. Celebrezze, 7 Cir., 310 F.2d 355, cert. denied 373 U.S. 921, 83 S.Ct. 1522, 10 L.Ed.2d 421; Carqueville v. Folsom, 7 Cir., 263 F.2d 875.

In the context of this record, a single issue is, thus, determinative of the deci-

1. Plaintiff did not then have the 14 quarters of insured employment required for coverage, no matter what view is taken of the issue here involved. 42 U.S.C. § 414 (a). That fact has no bearing upon the decision of this case. If she was a bona fide employee, she had satisfied the requirements for coverage as of April 1, 1967, a date which antedates the hearing examiner's determination and the subsequent decision of the Appeals Council.

sion, i. e., whether substantial evidence upon the record as a whole supports the Secretary's determination that no valid employer-employee relationship existed between plaintiff and her brothers.

There is no dispute in the material facts.

Plaintiff and her husband were separated in 1936, and were never thereafter reconciled. Plaintiff was left with an infant daughter to support.

Plaintiff obtained employment as a housekeeper as a means of supporting herself and her child. She worked for various non-related families in, among other places, Peoria and Colfax, Illinois. In 1938, or 1939, the critical time here involved, plaintiff was, and had for some time been, working as a housekeeper for a family at Colfax. She resided in the home and received compensation of $4.00 or $5.00 per week for her services, plus room and board for herself and her child.

Plaintiff had three bachelor brothers who rented and farmed some 500 acres of land near Pontiac, Illinois. Until the late 1930's their mother lived with them and kept house for them. By the latter time, the mother was elderly and in ill health. In either 1938 or 1939 the brothers asked plaintiff to leave her employment at Colfax and work as a housekeeper for them. She did so. Until the mother's death in 1946, plaintiff assisted with the housekeeping. Thereafter, she continued to live with the brothers and to keep house for them until the time of the hearing before the hearing examiner.

The initial arrangement between plaintiff and her brothers provided for no specific cash remuneration to plaintiff for her housekeeping services. The brothers agreed to provide room and board for plaintiff and her child, to provide all of the necessities for them, and to provide for the child's education. The brothers paid the household bills. As the need arose, they gave plaintiff money to buy clothing and other things necessary for her own and her child's welfare. They paid the expenses of a high school education for the child and continued to support her in the home for the some five years intervening between her graduation from high school and her subsequent marriage in 1957.

That initial arrangement continued until 1963. Plaintiff testified that, in that year, the brothers agreed to pay her the sum of $1,800 per year in addition to her room and board for her work.[2] FICA taxes were reported and paid on the sum paid in each of the years of 1964 through 1967. Plaintiff reported the sum as wages upon her income tax returns for each of the years in question.

There was no change in the services rendered by plaintiff. She continued to do the housekeeping work as she had for the some 25 years immediately thereto preceding.

In January, 1966, plaintiff signed a questionnaire prepared by an employee of the Social Security Administration. She is there recorded as having stated, in effect, that she felt obligated to her brothers and had worked for them, but that the brothers had recognized the value of her services in 1963 and had begun to pay her wages. Checked "yes" or "no," answers to other printed questions carry the implication that she stated that the brothers did not supervise her work and had no authority to dismiss her.

A like questionnaire, signed by a brother of plaintiff on the same day, imports

---

2. Both witnesses testified that it was agreed that wages for each year would be paid in a lump sum at the end of the year when the crops were sold. Thus, the "wages" for 1963 were paid in February, 1964, and those for each year subsequent to 1963 were actually paid in the year following that of performance of the housekeeping service. The examiner found that plaintiff had no quarters of coverage for the year 1963, but that she had received wages in each of the years 1964 to 1967, inclusive.

The examiner noted that payment of wages in a lump sum at the end of the year was "unusual for most employment relationships," but that the arrangement was "understandable" since plaintiff had independent sources of income and was not dependent upon such payments for her "immediate necessities."

a similar indication as to the lack of certain of the standard indicia of an employment relationship.

The Appeals Council determined from that evidence that there was no employer-employee relationship, but only an arrangement between siblings for the mutual convenience and benefit of all parties concerned.

■■ We think the most significant factor here is the fact that the Council reversed the findings of the hearing examiner who heard the testimony of the witnesses. Though the findings of a trial examiner are not binding upon the agency which he serves, e. g., Peterson v. Gardner, 2 Cir., 391 F.2d 208, 209, the agency is not at liberty to ignore such findings. Where, as here, the agency has rejected the findings of its examiner, a reviewing court must consider the record as a whole and accord to "the findings of the trial examiner" such relevance as the same may reasonably bear to the determination whether substantial evidence supports the decision being reviewed. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 493, 497, 71 S.Ct 456, 95 L.Ed. 456. The evidence supporting the final decision may become less substantial when the agency has rejected its examiner's findings, and it becomes significantly so when the findings of the examiner depend upon an evaluation of the credibility of the witnesses who testified before him. Ibid, at 496.

■ The same court which decided the *Peterson* case has said that the findings of a hearing examiner are entitled to great weight when they rest upon credibility determinations made by the examiner, and that such findings cannot be rejected by the agency if the overriding factual matters relied upon by the agency are not impressive. Dolan v. Celebrezze, 2 Cir., 381 F.2d 231, 233.

One cannot read the hearing examiner's opinion in this case without noting that an evaluation to the credibility of the witnesses had a substantial bearing thereupon. His opinion summarizes the evidence with substantial fullness. Specific reference is made to the vagueness and uncertainty of plaintiff's testimony. The contradictions between her testimony and the domestic service questionnaire which she previously had signed are implicitly recognized by the examiner's summary of the questionnaire statements. Despite opposed statements in her questionnaire and the questionnaire signed by one brother, the examiner stated that "undoubtedly" the brothers could have discharged plaintiff had her services not been satisfactory. He expressly noted that plaintiff, by 1963, had independent sources of income and might have left the employment had she seen fit so to do.

The examiner found that, notwithstanding the existence of the family relationship, and notwithstanding the inconsistencies in the evidence inherent in the record, a valid employer-employee relationship existed, that payments made to plaintiff by her brothers were "wages" and that plaintiff had attained fully insured status for social security benefits.

■ Unquestionably, there is substantial evidence to support the examiner's finding of an employer-employee relationship. It is certain that the evaluation of the credibility of witnesses had a substantial bearing upon the examiner's decision. Under those circumstances, the examiner's findings partake of a binding character. We think the Council was bound by those findings of fact unless evidentiary facts which the examiner ignored provide a substantial basis for rejection of them. Cf., Dolan v. Celebrezze, 2 Cir., 381 F.2d 231, 233.

We find no such basis for their rejection upon this record. It seems apparent that the Appeals Council viewed the sibling relationship as an overriding, conclusive factor. Its opinion stresses that relationship and the content of plaintiff's prior questionnaire to support its finding of the lack of a bona fide employment relationship.

The Council's reference to the questionnaire reflects a distinction in emphasis, only, not evidentiary fact which the examiner ignored. The record discloses

that the examiner questioned plaintiff to some considerable extent about apparent discrepancies between her testimony and certain answers in the questionnaire. Specific reference to the questionnaire is contained in the examiner's opinion.

Great stress was placed by the Council upon plaintiff's questionnaire statement that she felt "obligated" to her brothers. Though this statement might be construed to create an inference opposed to the existence of an employment relationship, it might, with equal plausibility, infer only that a sense of obligation would lead her to choose her brothers as employers over other persons.

In this context the Court does not presume to weigh the evidence. It simply stresses the point that, since multiple inferences may be drawn from that statement, its critical force relates to the question of plaintiff's credibility.

In the same context of the questionnaires, an argument based upon absence of control lacks substantiality. The evidence reveals that none of the brothers knew how to cook or to do the other routine work of housekeeping, that plaintiff directed her own time and scheduling of the work which she did, and that she was directed by her brothers only as to special chores which they deemed necessary.

The right to control is a relative thing. A distinction must be drawn between the degree of control of one engaged in building an atomic bomb, for example, and one engaged in housekeeping in a farm home. In the latter case, the command, "Keep house," may be direction, continuous in force until that command is countermanded. That seems especially true in a case as this in which plaintiff was more knowledgeable of the needs than were her brothers. Plaintiff was engaged in the day-to-day, week-to-week, repetitious routine of housekeeping. It is not surprising, and certainly not fatal to her claim, that she employed her own knowledge and experience to determine what must be done, and the sequence of its doing.

The Council ignored the fact that plaintiff gave up gainful employment, upon which she relied for the support of herself and her child, to work for her brothers. It also ignored plaintiff's testimony that she considered the offer by her brothers, to provide all of the necessities for herself and her child, and education for the child, more remunerative than the impecunious wage, plus room and board, which she received from her non-related employer.

■ The hearing examiner expressly discussed and evaluated the evidentiary facts which the Council stressed. There is no evidentiary fact which he can be said to have ignored. This court finds in this record no overriding factual matter to support the Council's decision and nothing of substantial import to refute the finding of the examiner that a bona fide employer-employee relationship existed. The admitted fact that the advent of wages to plaintiff in 1963 had as a purpose the qualification of plaintiff for social security benefits does not affect her claim since a bona fide employment relationship did exist. Rhoads v. Folsom, 7 Cir., 252 F.2d 377, 380.

■ The Court is compelled to the conclusion that the decision of the Council is not supported by substantial evidence. Nothing but undue verbosity could be achieved by a discussion of the several cases upon which the Secretary relies.[3] Each case must stand or fall upon its own record, and no number of sibling cases would have any persuasive virtue unless they presented evidentiary fact situations identical to this.

The Secretary's motion for summary judgment is denied. Plaintiff's motion for summary judgment is allowed, and judgment is entered reversing the decision of the Secretary denying benefits to plaintiff.

3. E. g., Sherrick v. Ribicoff, 7 Cir., 300 F. 2d 494; Foss v. Gardner, 8 Cir., 363 F.2d 25; Sabbagha v. Celebrezze, 4 Cir., 345 F.2d 509; Palmer v. Celebrezze, 3 Cir., 334 F.2d 306; Domanski v. Celebrezze, 6 Cir., 323 F.2d 882, 8 A.L.R.3d 687; Barron v. Ribicoff, 4 Cir., 295 F.2d 432.