Cephas R. SMITH, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education, and Welfare,
Defendant.

Civ. A. No. 707.

United States District Court
S. D. West Virginia,
at Bluefield.

Dec. 29, 1962.

I. Mann Litz, Welch, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Charleston, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education and Welfare that he was not entitled to a period of disability and to disability insurance benefits under sections 223 and 216(i) of the Social Security Act, as amended. For the reasons stated hereinafter, it is now found that the decision of the Secretary is supported by substantial evidence and that the defendant's motion for summary judgment should be granted.

On October 28, 1960, plaintiff filed an application to establish a period of dis-

ability and for disability insurance benefits [1] in which he alleged that he became unable to work in September, 1954 (at age 53) because of "high blood pressure, back trouble, and asthma." This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon reconsideration. On March 19, 1962, a hearing examiner also found that plaintiff was not entitled to a period of disability and to disability insurance benefits. This decision became the final decision of the Secretary when the Appeals Council denied plaintiff's request for review on April 30, 1962.

Plaintiff met the special "insured status" requirements in September, 1954, the date that he alleged that he became disabled. He continued to meet these requirements until December 31, 1956.

To meet the statutory definition of disability, plaintiff had the burden of proving that he had been continuously precluded from engaging in any substantial gainful activity by a disabling impairment which commenced no later than December 31, 1956 (the last date on which he met the "insured status" requirements) and that such disabling impairment continued without interruptions to October 28, 1960, the date on which he filed his present application. The final decision of the Secretary held that plaintiff had failed to establish these essential facts. This court finds that there is substantial evidence in the record to support such finding of the Secretary.

As in all cases of this type, the medical evidence of record is of great importance and must be carefully weighed and evaluated in conjunction with all other evidence submitted in determining whether the Secretary's final decision is supported by substantial evidence. In this case it is significant that all of the medical evidence resulted from examinations and consultations made several years after the date of the inception of the alleged disability. The earliest medical report was dated April 30, 1958, approximately three and one-half years after plaintiff ceased working because of the alleged disability and about eighteen months after his insured status had expired. The last report was dated February 8, 1962. In other words, none of the medical reports are even slightly contemporaneous with the occurrence of the supposed disability.

The report of April 30, 1958, from Dr. J. H. Murry, indicates that plaintiff had a congenital deformity of the left shoulder, left leg, and hip with marked limitation of motion of the left shoulder. There was also atrophy of the muscles of the left arm, shoulder, thigh and leg. Other medical evidence attributed this atrophy to the congenital condition. The report also indicated hypertensive cardiovascular disease, arthritis of the left shoulder, and post traumatic arthritis of the right hip. At that time there was some elevation in plaintiff's blood pressure, and shortness of breath on moderate exertion. His reflexes were normal. There was no paralysis, hemiplegia, or tremors. There was also other evidence corroborating these findings and adding, among other things, the further information that plaintiff had suffered a dislocation of the right hip in 1951. During his hospitalization for that injury, his blood pressure appeared to be rather normal. He returned to work in the mines after this accident. There was also evidence that plaintiff is now suffering from a right inguinal hernia. It was further observed in some of the other reports that plaintiff had been told that he had had a stroke in 1958.

There is no clear medical evidence that plaintiff had any physical illness whatsoever prior to December 31, 1956. Because of a cut-off of work in the coal mines, he was without work in 1950 at the age of 49. He worked some in 1951

---

1. Plaintiff had previously filed applications for a period of disability and for disability insurance benefits on March 4, 1958, and April 18, 1958. Upon denial of these applications, plaintiff failed to pursue his administrative remedies further. These applications are not now before this court for review.

and 1952, none in 1953, and a little in 1954.

There would seem to be no doubt that since August, 1960, plaintiff has been ill with high blood pressure and that he probably sustained a stroke at that time. But there is substantial evidence to show that he did not become significantly ill with high blood pressure prior to August, 1960. In his interview on June 30, 1958, he did not refer to high blood pressure or the significant symptoms associated with such illness, such as dizziness, blackouts, severe or frequent headaches, and light headedness that he later reported in an interview of October 31, 1960. There was no mention of such symptomatic complaints by the plaintiff to either Dr. Hosmer or Dr. Irvin in their reports of examinations conducted July 15, 1958, and May 5, 1959, respectively. Dr. Murry did find a high blood pressure reading in 1957, but such condition was reported as a secondary condition and was not of such severity as required treatment by Dr. Murry. Summarizing, it would seem that prior to December 31, 1956, the medical evidence indicated two impairments, the first being the deformity in the left shoulder and left leg which existed since birth or throughout most of his life, and the second being a dislocated right hip caused by an accident in 1951. By early 1952 the hip had completely recovered without any residual effects.

Dr. Murry stated that the deformity resulting at birth had caused plaintiff to walk with a limp in his left leg and had caused an atrophy of the muscles in the left leg and left shoulder with a marked limitation of motion in the left shoulder. He told the doctors that he had been troubled with these conditions since infancy. Despite these congenital deformities, Dr. Hosmer found in his examination, which occurred a year and a half after plaintiff's insured status expired on December 31, 1956, that plaintiff retained reasonably good function in both the left shoulder and left leg. These deformities did not impede his ability to work as a coal miner throughout his life because he stated that starting in 1919 he worked as a coal miner 8 hours a day, 5 days per week. While it is true that plaintiff has not worked since 1954, it is also true that he did not seek disability benefits until 1958, and had only one physical examination between 1952 and 1958, that being in 1957.

■ There was much other medical evidence, but it would serve no useful purpose to set it all out here. Suffice it to say that the medical evidence, together with the other evidence of record, both objective and subjective, including the fact that plaintiff was "cut off" and did not stop working because of his physical condition, does not establish as a matter of law that plaintiff was disabled within the meaning of the Act within his insured period. Whether he has since become disabled, i. e., after the expiration of the insured period, is of no importance in the determination of this case except to the extent that it might possibly aid in determining his physical condition during the insured period.

■ It has also been noted by this court that several of the medical reports contained statements by the various doctors that plaintiff was unable to work because of his physical condition. These statements are clearly not binding on the hearing examiner, the Appeals Council, or this court, although such statements should be considered with all the other evidence in the case. Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962). Further, these statements were made several years after the alleged disability began and were undoubtedly based on plaintiff's condition at the time of the examinations which occurred at various times between 1958 and 1962. This court, however, has given due consideration not only to these statements but also to the reports generally and to all other evidence of record.

There is substantial evidence to support the decision of the Secretary that plaintiff was not entitled to a period of disability and to disability insurance benefits, and that the plaintiff has failed to meet the necessary requirements for

758

establishing the existence of a disabling impairment prior to December 31, 1956, within the meaning of the Act. Therefore, defendant's motion for summary judgment is granted.