Mary A. **WYLIE**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE.**

Civ. No. 11805.

United States District Court
D. Connecticut.

Dec. 11, 1968.

George F. Murray, Jr., Wendell Gates, Hartford, Conn., Paul J. Falsey, New Haven, Conn., for plaintiff.

Jon O. Newman, U. S. Atty., John F. Mulcahy, Jr., Asst. U. S. Atty., Hartford, Conn., for defendant.

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

BLUMENFELD, District Judge.

In this action under 42 U.S.C. § 405(g) for review of a final decision of the Secretary of Health, Education and Welfare denying plaintiff's application for disability benefits, plaintiff and defendant both seek summary judgment based on the pleadings, the transcript of the hearing below, and the final decision thereon.

Plaintiff applied for disability benefits, and a hearing was held on June 9, 1966. The examiner recommended a denial of her application, and this recommendation was adopted by the Appeals Council on December 9, 1966. On February 7, 1967, plaintiff filed this action for judicial review; and on April 24, 1967, this court remanded the case, at the Secretary's request, for further evidence. After a second hearing, an examiner recommended denial of plaintiff's application on February 6, 1968; this recommendation was adopted by the Appeals Council on March 22, 1968. Plaintiff now seeks review of that action.

### The Finding Below

Plaintiff's claim of disability is based on an alleged thyroid condition and related mental retardation, which it is claimed resulted in plaintiff's inability to hold down a job because it caused her inability to get along with others and her lackadaisical attitude. It is claimed that the disability set in about 1947. The evidence presented revealed a history of emotional problems, difficulties in adjustment, various jobs, and various medical problems. The hearing examiner based his recommendation on the lack of medical evidence sufficient to show a disability before June 30, 1950, the last day on which plaintiff met the statutory "earnings" requirement, or "insured status" requirement. *See* 42 U.S.C. § 423(c).

The evidence showed that plaintiff was employed by G. Fox & Company in a clerical capacity from 1923 to 1932, when she was laid off for no apparent reason (other than economic conditions). During the 1930's she had various other jobs of a clerical nature in department stores. In 1940 she got a job with Pratt & Whitney Aircraft Company; its records state that she was discharged in

1944 because of insubordination. However, plaintiff testified that she quit because her mother was opposed to the war and considered plaintiff a traitor for working there. She had miscellaneous jobs after that time until 1947. Since 1947 she has neither sought nor had outside employment. During 1947–1951, she helped her mother run a rooming house and helped her sister run an antique shop.

There was no evidence of medical treatment of any kind prior to June 30, 1950. A Dr. Sayers testified that he had known plaintiff for years, and that on a few occasions between 1947 and 1951 he had treated plaintiff's mother in her home. He testified that during one of these visits, in 1947, he had observed plaintiff and that she obviously had a thyroid condition. However, he never told plaintiff or anyone else about this; he stated that this was because he thought plaintiff was being treated by another doctor and it would be unethical for him to mention it. He also was unable to say why no other doctor who had subsequently treated plaintiff for various problems had recognized this "obvious" glandular condition before 1963.

In 1951 a Dr. Murphy treated plaintiff for anemia. Treatment and examination were discontinued after a few visits. In his report of June 3, 1966, he stated that she was "totally disabled" and that her condition was the same then as it was in 1951. He also stated therein that plaintiff had been "unemployable since 1932." However, at the hearing he testified that he included this statement "probably" because plaintiff had told him that she had last worked in 1932 (an obviously untrue statement).

Other medical evidence showed that in 1953 plaintiff was treated by a Dr. Von Glahn for osteoarthritis of the hands. In 1957, when plaintiff entered St. Francis Hospital for dental treatment, a preadmission physical examination was essentially negative, and the part of the report termed "Significant Past History" contained the single word "Psy-choasthenia," a neurosis. In 1959 she was treated for eczema by Dr. Von Glahn. In 1963 plaintiff for the first time was diagnosed as hyperthyroid; and she was admitted to St. Francis in early 1964, where she remained for a week. She has been under medical supervision for that condition since the 1963 diagnosis. Finally, in June 1967, plaintiff underwent psychiatric examination; it was not very thorough because plaintiff did not cooperate, but the doctor did not detect any obvious surface mental disability.

There was also much lay testimony by plaintiff's sisters to the fact that plaintiff was "run down" and had "deteriorated" since 1947. She had been regarded as retarded most of her life by her family, and her family made most of her decisions for her. It was allegedly because her family was opposed to medical treatment that she did not see a doctor before June 1950.

*The Relevant Law*

Title 42 U.S.C. § 423(d) contains the following relevant subsections:

"(1) The term 'disability' means—

(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.

\* \* \* \* \* \*

"(3) For the purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

\* \* \* \* \* \*

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

Subsection 423(d) (3) was added in 1967 by Public Law 90–248. It became effective on January 1, 1968, but applies to applications made before that time if, *inter alia,* the applicant has not died and notice of a final decision of the Secretary has been given prior to that time but a civil action for review has commenced and a final decision has not been reached before that time, as in the present case. *See* 1968 Amendments, 42 U.S.C. § 423, at 2040. Among other things, Congress was concerned with judicial interpretations that had not required the existence and severity of the impairment to be supported by clinical and laboratory diagnostic techniques. "Statements of the applicant or conclusions by others with respect to the nature or extent of impairment or disability do not establish the existence of disability for purposes of social security benefits based on disability unless they are supported by clinical or laboratory findings or other medically acceptable evidence confirming such statements or conclusions." S.Rep. No. 744, 90th Cong., 1st Sess., in U.S. Code Congressional and Administrative News, pp. 2882–83 (1967).

The scope of review by this court is limited. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." 42 U.S.C. § 405(g); *accord,* Franklin v. Secretary of HEW, 393 F.2d 640 (2d Cir. 1968). The question is whether in this case there was substantial evidence to support the findings. This case is unlike the normal case, in which there is direct medical evidence obtained during the time when the applicant was in an insured status, the evidence is conflicting, and the hearing examiner weighs the evidence on each side. Here, the examiner's recommendation was based not on a weighing of conflicting evidence but on a lack of sufficient evidence of a medical impairment for the relevant period.

■■ The applicant has the burden of proving disability. Franklin v. Secretary of HEW, *supra;* Kerner v. Flem-

ing, 283 F.2d 916 (2d Cir. 1960); *see* Carnevale v. Gardner, 393 F.2d 889 (2d Cir. 1968); 42 U.S.C. § 423(d) (5). Furthermore, the applicant must show that the disability occurred prior to the time the insured status ended, Carnevale v. Gardner, *supra;* and where there is no evidence of the alleged impairment for the prior period, that impairment cannot be considered in determining disability, *see* Kartje v. Secretary of HEW, 359 F.2d 762 (7th Cir. 1966); Seals v. Gardner, 356 F.2d 508 (5th Cir. 1966); Smith v. Celebrezze, 211 F.Supp. 755 (S.D.W.Va.1962).

The latter case is particularly applicable to the case at hand. In that case the applicant claimed that he had been unable to work since September 1954 due to high blood pressure, back trouble, and asthma. The insured period ended on December 31, 1956. The earliest medical report submitted was dated April 30, 1958. Subsequent medical reports did show various illnesses and complications since 1960. There was also evidence that the applicant had quit work for reasons other than the alleged disability. The court noted that "none of the medical reports are even slightly contemporaneous with the occurrence of the supposed disability," and further noted, "Whether he has since become disabled, i. e., after the expiration of the insured period, is of no importance in the determination of this case except to the extent that it might possibly aid in determining his physical condition during the insured period." *Id.* at 756–757. The court held that the denial of disability benefits was based on substantial evidence.

■ In this case, aside from non-medically based testimony of plaintiff and members of her family, the only testimony concerning the existence of a thyroid condition, its state if one did exist, and its relation to her mental attitude during the insured period, was the statement of Dr. Sayers based on his casual observations of plaintiff in 1947. In light of the other factors regarding his testimony, discussed *supra* the hear-

ing examiner was "not impressed" with his testimony. The hearing examiner's determinations of credibility are entitled to "great weight" on review. Dolan v. Celebrezze, 381 F.2d 231 (2d Cir. 1967). Furthermore, his observations can hardly be said to meet the test of 42 U.S.C. § 423(d) (3), quoted *supra*. Dr. Murphy's statement that plaintiff was "unemployable since 1932" was based solely on plaintiff's statement to him, *see* discussion *supra*. Even if it could be called a medical opinion, it goes to the ultimate issue of disability—which is for administrative determination—rather than to a factual question of physical condition. *See* Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). The same is true of his 1966 opinion that plaintiff was "totally disabled."

Plaintiff also introduced no evidence that she was dismissed from any of her jobs because of her alleged disability. The only evidence offered on this point was to the effect that she was dismissed for insubordination or that she just "walked off" the job. There was no indication that any of her employers considered her physically or mentally incapable of doing her job.

Finally, plaintiff failed to present any evidence of a change in her condition between her last outside employment, in 1947, and the end of the insured period. It was claimed that plaintiff was retarded "all her life," but nothing was offered to explain why she was able to work, despite the retardation, before 1947 but not after.

■■ It is true that the medical evidence from the period after the insured status expired might be relevant to the condition before. See Carnevale v. Gardner, *supra*; Smith v. Celebrezze, *supra*. But despite the fact that plaintiff was treated for various medical problems in 1951, 1953, 1957, and 1959, the first report of a thyroid condition was in 1963, thirteen years after the insured period expired. This would amply support the examiner's determination that it was purely speculative concerning plaintiff's condition prior to June 30, 1950.

### Conclusion

There is substantial evidence to support the findings below, particularly in light of the statute's definition of "disability" and its requirements of proof of "impairment." The plaintiff's motion for summary judgment is denied and the defendant's motion is granted.

So ordered.