**Beulah W. WHITE**

v.

**Caspar WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74-295-A.**

United States District Court, W. D. Virginia.

May 27, 1975.

MEMORANDUM OPINION
AND ORDER

TURK, Chief Judge.

Plaintiff is appealing the final decision of the Secretary of Health, Education and Welfare denying her claim for widow's benefits under the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 *et seq.* The only issue to be decided in this appeal is whether the Secretary's decision is supported by substantial evidence and if it is, this court must affirm.

Under the applicable statutory sections, 411–12, 30 U.S.C. §§ 921–22, and regulations 20 C.F.R. § 410.210, in order for plaintiff to establish her entitlement to benefits, she has to show that she was the unmarried widow of a miner upon whom she was dependent at the time of his death; that she filed a claim for benefits in accordance with the provisions of the Act; and that at the time of her husband's death, he was totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis. The basis for denying plaintiff's application in this case was the failure to show that her husband's death was due to pneumoconiosis or that he was totally disabled by pneumoconiosis.

The evidence established that the deceased miner worked in the mines thirty-two years; however, for all but eleven years, he was self-employed. At his death, he was working for C & W Coal Company as a bulldozer operator.

The medical evidence established that the miner did indeed have simple pneumoconiosis. A chest x-ray of April 11, 1973, show p type opacities in the upper and mid lung zones bilaterally, 2/1 in profusion. No large opacities were seen. A death certificate signed by Ralph W. Hess, M.D., Buchanan County Medical Examiner, showed that death occurred in fifteen minutes on May 27, 1973, from an acute myocardial infarction (heart attack) due to coronary artery disease. Soft coal worker's pneumoconiosis was also listed as another condi-

Larry Grant Browning, Moore & Browning, Abingdon, Va., for plaintiff.

Carr L. Kinder, Jr., Asst. U. S. Atty., Roanoke, Va., for defendant.

tion contributing to death but not related to the terminal disease. Dr. James M. Peery, performed an autopsy on May 30, 1973. The autopsy protocol disclosed a history of chest pains radiating through the neck. Both lungs contained black discolorations with tiny nodules felt on palpation of the left lung. Both lungs aerated well. The heart was somewhat enlarged. "Possible coronary occlusion" was reported as the probable cause of death.

At the hearing, plaintiff testified that her husband had trouble breathing, especially at night. He had coughing problems to the point of passing out; he also had chest pains. A neighbor testified that the deceased miner often ran out of breath on bear hunts.

Pursuant to statutory mandate, the Secretary has prescribed standards for determining whether the death of a miner was due to pneumoconiosis or whether at the time of his death, the miner was totally disabled by pneumoconiosis. 20 C.F.R. 410.401 et seq. These regulations, together with the statutory standards and presumptions, establish the alternate tests for entitlement.

■ The first alternative is through the interim adjudicatory rules, 20 C.F.R. § 410.490. Under these rules, a rebuttable presumption of total disability or death due to pneumoconiosis may be made where 1) an x-ray, biopsy, or autopsy confirms the existence of simple pneumoconiosis (at least 1/0 p, see 20 C.F.R. § 410.428), or 2) in the case of a miner who worked many years in underground mines, ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values equal to or less than values specified in the table in § 410.490(b). Plaintiff has submitted both x-ray and autopsy evidence which indicate the presence of simple pneumoconiosis; therefore, the presumption arises. However, it is rebutted by § 410.490(c). Subsection c provides that the presumption may be rebutted if there is evidence that an individual is or was doing his usual coal mine work or comparable gainful work. Mr. White was doing his usual coal mine work shortly before his death.

The second test is found in §§ 410.418 and 410.458. This test requires the plaintiff to demonstrate the existence of complicated pneumoconiosis. Complicated pneumoconiosis is a much more serious disease, and none of the medical evidence shows this disease.

■ The third test relates solely to the issue of death due to pneumoconiosis. Under this test, if a miner worked ten years or more in the mines and died from a respirable disease, there is a rebuttable presumption that his death was due to pneumoconiosis, §§ 410.458, 410.-460. Section 410.462(b) provides that death will be found due to a respirable disease when death is medically ascribed to a chronic dust disease or to another chronic disease of the lung. Section 410.462 further states that "[w]here the evidence establishes that a deceased miner suffered from pneumoconiosis or a respirable disease and death may have been due multiple cause, death will be found due to pneumoconiosis if it is not medically feasible to distinguish which disease caused death or specifically how much each disease contributed to causing death.

Both the death certificate and the autopsy protocol attribute death to heart attack (coronary occlusion leading to acute myocardial infarction). The death certificate notes that the miner died in fifteen minutes. The autopsy protocol indicates that, minutes prior to his death, the deceased miner was sitting in a rocking chair talking with his son, and that prior to that time, the miner was "doing all right" other than complaints of chest pains. The death certificate listed the underlying cause of death as coronary artery disease for one year. While soft coal worker's pneumoconiosis was listed as a significant condition contributing to death, the certificate clearly does not list that disease as a cause of death. Thus, it appears

that death was not due to multiple causes, but only one—heart attack. However, assuming that acute myocardial infarction and pneumoconiosis should be considered "multiple causes", the presumption in § 410.462 still does not arise because the medical and other evidence distinguished which disease caused death.

The final alternative by which plaintiff may show that the miner was totally disabled due to pneumoconiosis at the time of his death or that his death was due to pneumoconiosis is found in §§ 410.414, 410.426, and 410.454. This test is a two-step process. First, the existence of pneumoconiosis must be established. Secondly, the plaintiff must demonstrate that the severity of the disease caused the miner to be totally disabled. In this regard, the law provides that "a miner shall be considered totally disabled when pneumoconiosis prevents him from engaging in gainful employment requiring the skills and abilities comparable to those of any employment in a mine or mines in which he previously engaged with some regularity over a substantial period of time." 30 U.S.C. § 902(f). Where a miner worked for many years in coal mine employment and prior to his death he had a totally disabling chronic respiratory or pulmonary impairment, a presumption arises either that he was totally disabled due to pneumoconiosis at the time of his death or that his death was due to pneumoconiosis. §§ 410.414, 410.454.

█ The deceased miner had simple pneumoconiosis at the time of his death, but the plaintiff has failed to show that he was totally disabled because of pneumoconiosis. Total disability is defined in terms of work capability, and the evidence demonstrated that the miner was working at his usual job up until the time of his death; therefore, any presumption of disability is rebutted.

██ The function of this court on review is not to try the matter *de novo* but to leave the finding of facts to the Secretary and to determine upon the whole record whether the Secretary's decision is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972). Based on the above analysis, the court is constrained to conclude that the Secretary's decision is supported by substantial evidence. Therefore, summary judgment is granted to the defendant.