Elbert ZIRKLE, Plaintiff,

v.

Casper WEINBERGER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 74-126-E.

United States District Court, N. D. West Virginia, Elkins Division.

Oct. 16, 1975.

of the Secretary of Health, Education and Welfare denying his claim for "black lung" benefits pursuant to the Federal Coal Mine Health and Safety Act of 1969, as amended, 30 U.S.C. § 901 et seq. Jurisdiction is founded on § 413(b) of the Act, 30 U.S.C. § 923(b), which incorporates § 205(g) and (h) of the Social Security Act, 42 U.S.C. § 405(g) and (h), by reference. The sole issue for determination by this Court is whether the Secretary's decision is supported by substantial evidence.

Plaintiff filed his application for benefits under the Act on December 17, 1970. His claim was initially denied on May 4, 1971, and upon reexamination pursuant to the 1972 amendments to the Act was again denied. Plaintiff filed a timely request for a hearing, which was conducted on August 17, 1973. On September 26, 1973 the administrative law judge rendered his hearing decision, finding Plaintiff entitled to benefits under the provisions of the Act. The Appeals Council, on its own motion, arranged to obtain additional medical evidence, and after reviewing the entire record, including the additional medical evidence, reversed the decision of the administrative law judge. This action by the Appeals Council on April 24, 1974 constituted the final decision of the Secretary. Plaintiff instituted this action, and defendant has filed a motion for summary judgment. Plaintiff has submitted a brief in opposition thereto, praying that defendant's motion for summary judgment be denied and that summary judgment be granted in favor of plaintiff.

In order to establish entitlement to benefits under the Act, plaintiff must establish that he was a coal miner, that he is totally disabled due to pneumoconiosis which arose out of his employment in the Nation's coal mines, and that he has filed a claim for benefits in accordance with the Act and the pertinent regulations. The Secretary's final decision acknowledges that plaintiff was a coal miner and that he has filed a proper ap-

Thomas L. Stockert, Jr., Buckahannon, W. Va., for plaintiff.

James F. Companion, Wheeling, W. Va., for defendant.

## MEMORANDUM ORDER

MAXWELL, Chief Judge.

Elbert Zirkle commenced this action for judicial review of the final decision

plication, but denies that plaintiff is totally disabled due to pneumoconiosis which arose out of his coal mine employment.

Plaintiff was born July 3, 1924. He completed the eighth grade in school and started working in 1939. His first coal mining job was in 1941, and between that time and late 1961 or early 1962, when he quit working, he worked in underground coal mines for some 14 years. Plaintiff is married and has six children, five of whom were under the age of 21 and living at home at the time of the hearing before the administrative law judge. Following his cessation of work, plaintiff applied for Social Security disability benefits, and he was awarded benefits, for a condition totally unrelated to the matter now under consideration, on April 7, 1964.

Plaintiff and his wife testified at his "black lung" hearing. Plaintiff testified concerning the dusty conditions in the mines in which he worked, his coughing and shortness of breath, and his inability to walk any distance or engage in any activity which requires even the slightest exertion. He also produced five medications he was taking at the time of the hearing, three of which (Codeine-Cosanyl, Tuss Ornade and Tedral) were apparently prescribed for a respiratory condition. Mrs. Zirkle testified that her husband's health was "pretty good" at the time of their marriage in 1952, but got progressively worse. She reiterated her husband's testimony as to his inability to exert himself, and stated that his persistent cough makes it difficult for him to sleep.

The medical evidence in this case is substantial, and the reports are, in some instances, conflicting. The reports that were considered in the Secretary's final decision will be briefly summarized below.

A chest x-ray taken April 15, 1971 was interpreted by Dr. Berthold H. Goerlich, a radiologist certified by NIOSH as a reader of coal miner's chest x-rays, as showing evidence of moderately advanced diffuse pulmonary emphysema with mild interstitial fibrosis, but no evidence of pneumoconiosis and no conglomerate lesions. This x-ray was reread by Dr. Joseph C. Furnary, a radiologist and internist. His report of February 2, 1973, indicated the presence of small rounded opacities, type P, 0/1 in profusion, and small irregular opacities, 0/0 category.

Pulmonary function studies were performed on August 14, 1972, at the Davis Memorial Hospital, Elkins, West Virginia. These studies revealed an $FEV_1$ value of 3.31 and an MVV value of 61.71. The technician who administered these tests noted in his report that Plaintiff did not put forth maximum effort, particularly on the MBC (synonymous with MVV).

Plaintiff was examined by Dr. Ira F. Hartman, his family physician. Dr. Hartman's report of January 5, 1973, reflected a five to ten year history of significant coughing with phlegm and shortness of breath. Wheezing and rhonci on both inspiration and expiration were noted and plaintiff was diagnosed as having chronic lung disease and chronic bronchitis. The report further indicated that Plaintiff's shortness of breath on even slight exertion would prevent him from performing coal mine work. This report did not contain an x-ray, pulmonary function studies or other objective medical evidence.

Another x-ray taken August 14, 1973 was read by Dr. J. L. Coyner, a radiologist at St. Joseph's Hospital, Buckhannon, West Virginia, and was interpreted as showing change compatible with minimal emphysema and fibrosis, which was stated to be compatible with pneumoconiosis, category 1/0.

Additional pulmonary function studies were performed on August 15, 1973. These studies yielded an $FEV_1$ of 1.4 liters and an MVV of 86 liters. Plaintiff's height was shown as 73 inches. His vital capacity was listed as good, but a markedly long expiration, consistent with emphysema, was noted.

Another report from Dr. Hartman was furnished. The report, dated October 9, 1973, stated that he had examined Plaintiff on August 14, 1973, and had diagnosed his condition as chronic lung disease with a guarded prognosis. This report contained no reference to objective medical evidence.

Plaintiff was again examined on January 22, 1974 by Dr. Dominic Gaziano, a Board-certified internal medicine specialist. A chest x-ray was taken and plaintiff also underwent pulmonary function studies. The x-ray findings were compatible with pulmonary emphysema with a mild ventilatory impairment. The results of the pulmonary function test were $FEV_1$ 3.10, MVV 95. The $FEV_1$ increased only to 3.12 after use of bronchodilators. These findings were also consistent with a mild obstructive ventilatory impairment. Dr. Gaziano also reviewed the pulmonary function studies performed on August 15, 1973, and reported that in his opinion the $FEV_1$ of 1.4 liters was the result of an error in calculation. He recalculated the $FEV_1$ as 2.45.

The chest x-ray taken by Dr. Gaziano on January 22, 1974, was reread by Dr. Harold I. Passes, an internist specializing in pulmonary disease and a NIOSH-certified reader of coal miner's chest x-rays. His roentgenographic interpretation report showed no evidence of pneumoconiosis, and the chest was found to be normal except for some minimal pleurisy at the right base.

Pneumoconiosis is defined as a chronic dust disease of the lung arising out of employment in a coal mine, 30 U.S.C. § 902(b), and includes the diseases and conditions designated in 20 C.F.R. § 410.110(o). Total disability is defined in § 402(f) of the Act, 30 U.S.C. § 902(f), and in the regulations prescribed by the Secretary. See 20 C.F.R. § 410.-412 and other regulations referred to therein. The Secretary, pursuant to the mandate of § 411(b) of the Act, 30 U.S.C. § 921(b), has promulgated regulations for determining whether a miner is totally disabled due to pneumoconiosis. Social Security Regulations No. 10, Subpart D, 20 C.F.R. § 410.401 et seq. These regulations, along with the statutory standards and presumptions, establish the alternative tests for entitlement.

The first alternative is under the interim adjudicatory rules set forth in 20 C.F.R. § 410.490. Under these rules, there is a rebuttable presumption of total disability due to pneumoconiosis where (1) an x-ray, biopsy or autopsy establishes the existence of simple pneumoconiosis, or (2) in the case of a coal miner who worked 15 years or more in underground or comparable coal mine employment, ventilatory function studies establish the presence of a chronic respiratory or pulmonary disease as demonstrated by values equal to or less than those set forth in the table in the regulation.[1]

In this case, there was no lung biopsy performed. The x-ray reports are conflicting. The April 15, 1971 x-ray was interpreted twice, and in neither instance was the presence of simple pneumoconiosis reported. The August 14, 1973 x-ray was interpreted as showing changes compatible with minimal emphysema and fibrosis, and these findings were reported to be compatible with simple pneumoconiosis category 1/0.

1. This table reads as follows:

| [Height] | Equal to or less than— | |
|---|---|---|
| | $FEV_1$ and | MVV |
| 67" or less | 2.3 | 92 |
| 68" | 2.4 | 96 |
| 69" | 2.4 | 96 |
| 70" | 2.5 | 100 |
| 71" | 2.6 | 104 |
| 72" | 2.6 | 104 |
| 73" or more; and | 2.7 | 108 |

The January 22, 1974 x-ray, which was read twice, did not indicate the presence of pneumoconiosis. While the 1973 x-ray report indicated the presence of simple pneumoconiosis under the UICC/Cincinnatti (1968) Classification (see 20 C.F.R. § 410.428), the Secretary found that as to the x-rays, the preponderance of the evidence failed to establish the presence of pneumoconiosis. The Secretary is charged with the duty of resolving conflicts in the evidence, and if, in doing so, his conclusion is supported by substantial evidence, it must not be disturbed. Substantial evidence has been defined as "more than a scintilla, but less than preponderance" *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Under this standard, it seems abundantly clear that the Secretary's determination that the x-ray reports failed to establish the presence of pneumoconiosis must stand.

As with the chest x-rays, the results of the pulmonary function studies performed are conflicting. The August 1972 study reflected plaintiff's height as 74 inches, and the results of the testing were an $FEV_1$ of 3.31 and an MVV of 61.-71, with poor cooperation on the MBC (MVV) noted. The $FEV_1$ was of a value in excess of that set forth in the table, and the Secretary was justified in considering the lack of cooperation in evaluating the MVV value.

The August 1973 ventilatory studies produced an $FEV_1$ of 1.4 liters and an MVV of 86 liters per minute. Plaintiff's height was listed as 73 inches. Both values were substantially less than those set forth in the table for a person of that height, and if these figures were accepted, the plaintiff would be entitled to the interim presumption in 20 C.F.R. § 410.490(b). However, the third pulmonary function study, performed January 22, 1974, yielded an $FEV_1$ of 3.10 (3.12 post-bronchodilation) and an MVV of 95. As indicated earlier, Dr. Gaziano, who administered the 1974 test, believed that the 1.4 $FÉV_1$ value in the 1973 test was a result of miscalculation, and he recalculated this figure to 2.45. Al-

though the latter figure is still less than that set forth in the table, the Secretary gave more credence to the 1972 and 1974 tests than to the values in the 1973 test. The discrepancy in the $FEV_1$ values, when considered in light of the apparent miscalculation on that value in the 1973 test, justifies, the Court believes, according greater weight to the 1972 and 1974 tests. In view of the standard set forth in *Thomas v. Celebrezze, supra,* the Court is of opinion that this evaluation of the pulmonary function studies by the Secretary satisfies the substantial evidence requirement and cannot be disregarded. Thus, the Court is in agreement with the Secretary's conclusion that plaintiff can not qualify under the interim adjudicatory rules.

The failure of a miner to qualify under the interim presumption in 20 C.F.R. § 410.490(b) does not prevent him from establishing his eligibility under the permanent rules. 20 C.F.R. § 410.-490(e).

■ The first alternative for establishing entitlement under the permanent rules is that set forth in 20 C.F.R. § 410.418, which is an almost verbatim adoption of § 411(c)(3) of the Act, 30 U.S.C. § 921(c)(3). This is a strict test which requires the demonstration of the existence of complicated pneumoconiosis through x-ray, biopsy or autopsy reports, and creates an irrebuttable presumption of total disability due to the disease. Where, as here, the weight of the evidence fails to establish the presence of even simple pneumoconiosis, the statutory irrebuttable presumption based upon evidence of complicated pneumoconiosis will not arise.

The next alternative to entitlement is found in 20 C.F.R. § 410.422, which provides that a determination of total disability due to pneumoconiosis is made in accordance with this section when the provisions of § 410.418 do not apply, or when the miner has a chronic respiratory or pulmonary impairment for purposes of § 410.414(b). Under § 410.422, whether or not pneumoconiosis in a particular case renders a miner totally disa-

bled is determined from all the facts of the case, but primary consideration is given to the medical severity of the pneumoconiosis, § 410.424, and also consideration is given to the miner's age, education and work experience, § 410.426.

20 C.F.R. § 410.424 provides that medical considerations alone shall justify a finding that a miner is totally disabled when his impairment is listed in the Appendix to Subpart D—Total Disability or Death Due to Pneumoconiosis,[2] or is one that is equivalent to a listing therein, and the impairment can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months. Clearly, such listings, which involve severe lung and heart conditions or great restriction in the oxygen transfer ability of the lungs, are not present here.

20 C.F.R. § 410.426 provides that where a plaintiff's pneumoconiosis neither constitutes a listing nor the equivalent thereof, he shall nevertheless be found disabled if the pneumoconiosis prevents the miner not only from engaging in his previous coal mine work, but also, considering his age, education, and work experience, precludes him from engaging in any other kind of comparable and gainful work available to him in the immediate area of his residence. In conjunction with this section there are set out certain medical criteria which, if met, will qualify plaintiff to a finding of total disability due to pneumoconiosis. First, there is a table of ventilatory function study values which must not be exceeded by actual test results for a finding of total disability due to pneumoconiosis to be made.[3] In order to establish total disability in accordance

2. "A miner with pneumoconiosis who meets or met one of the following sets of medical specifications, may be found to be totally disabled due to pneumoconiosis at the pertinent time, in the absence of evidence rebutting such finding:

(1) Arterial oxygen tension at rest (sitting or standing) or during exercise and simultaneously determined arterial $p^{co2}$ equal to, or less than the values specified in the following table:

| Arterial $p^{co2}$ (mm. Hg) | Arterial $p^o$ equal to or less than (mm. Hg) |
| --- | --- |
| 30 or below | 65 |
| 31 | 64 |
| 32 | 63 |
| 33 | 62 |
| 34 | 61 |
| 35 | 60 |
| 36 | 59 |
| 37 | 58 |
| 38 | 57 |
| 39 | 56 |
| 40 or above | 55 |

or

(2) Cor pulmonale with right-sided congestive failure as evidenced by peripheral edema and liver enlargement, with:

(A) Right ventricular enlargement or outflow tract prominence on x-ray or fluoroscopy; or

(B) ECG showing QRS duration less than 0.12 second and R of 5 mm. or more in $V_1$

and R/S of 1.0 or more in $V_1$ and transition zone (decreasing R/S) left of $V_1$; or

(3) Congestive heart failure with signs of vascular congestion such as hepatomegaly or peripheral or pulmonary edema, with

(A) Cardio-thoracic ratio of 55 percent or greater, or equivalent enlargement of the transverse diameter of the heart, as shown on teleroentgenogram (6 foot film) ; or

(B) Extension of the cardiac shadow (left ventricle) to the vertebrae column on lateral chest roentgenogram and total of S in $V_1$ or $V_2$ and R in $V_5$ or $V_6$ of 35 mm. or more on ECG.

3.

| Height (inches) | MVV (MBC) equal to or less and than L./Min. | $FEV_1$ equal to or less than L. |
| --- | --- | --- |
| 57 or less | 52 | 1.4 |
| 58 | 53 | 1.4 |
| 59 | 54 | 1.4 |
| 60 | 55 | 1.5 |
| 61 | 56 | 1.5 |
| 62 | 57 | 1.5 |
| 63 | 58 | 1.5 |
| 64 | 59 | 1.6 |
| 65 | 60 | 1.6 |
| 66 | 61 | 1.6 |
| 67 | 62 | 1.7 |
| 68 | 63 | 1.7 |
| 69 | 64 | 1.8 |
| 70 | 65 | 1.8 |
| 71 | 66 | 1.8 |
| 72 | 67 | 1.9 |
| 73 or more | 68 | 1.9 |

with the table in this section, the studies would have to yield an $FEV_1$ of 1.9 liters or less and an MVV of 68 liters per minute or less. Even if the $FEV_1$ of 1.4 on the August 1973 test is accepted without recalculation, either the $FEV_1$ or the MVV exceeded the table values on all three pulmonary function studies, and therefore, the presumption of total disability does not arise under this criterion. The second criterion involves physical performance testing. Since no testing was performed, this criterion is not applicable. The third and final criterion indicates that where other relevant evidence establishes that the miner has a chronic respiratory or pulmonary impairment, he will be found totally disabled if such impairment prevents him not only from doing his previous coal mine work, but also, considering his age, education, and work experience, prevents him from engaging in comparable and gainful work. If total disability is found to exist under this standard, and if the miner has worked many years (although less than 15) in underground or comparable coal mine employment, a presumption will arise that the impairment involved is pneumoconiosis.

■ In this case, plaintiff has worked in excess of 10 years in underground mining, and there is subjective evidence (his testimony and that of his wife) and objective medical evidence of some respiratory impairment. However, the Secretary concluded that the medical evidence does not establish that the respiratory impairment involved is of sufficient severity to be totally disabling; rather the evidence as a whole is consistent with the existence of only a mildly obstructive airway impairment. The Court is of opinion that this conclusion is supported by substantial evidence, and that the Secretary's decision must therefore stand. *Blalock v. Richardson*, 483 F.2d 773 (4th Cir. 1972).

■ 20 C.F.R. § 410.470 provides that findings of disability by other governmental or non-governmental agencies are not determinative of disability under the Act because of differing definitions of disability. The term "other governmental agency" includes the Social Security Administration with respect to a decision relating to entitlement to disability insurance benefits. Under the provisions of 20 C.F.R. § 410.426, a miner may be determined to be totally disabled due to pneumoconiosis only if that disease is the primary reason for his inability to engage in comparable gainful work. Medical impairments other than pneumoconiosis may not be considered. *Id.* Thus, plaintiff's disability based on psychiatric and orthopedic impairments may not be considered in determining his entitlement under the Act.

■■ In his brief in opposition to defendant's motion for summary judgment, plaintiff contends that the Appeals Council did not give sufficient weight to the administrative law judge's decision, particularly in view of the fact that he had the opportunity to observe the demeanor of the witnesses and weigh their credibility, whereas the Appeals Council's decision was based upon only a review of the record. Plaintiff characterizes the Appeals Council's notice of its determination to review the administrative law judge's decision, with the requisite notice of opportunity for plaintiff to appear personally, as "perfunctory," and asserts that the plaintiff was not advised or given notice of "those questions of fact or questions of credibility under review." (Plaintiff's brief, p. 5). Plaintiff further alleges that he "is unable to determine the information, if any, utilized by the Appeals Council to review Judge Denning's decision." (Plaintiff's brief, p. 8). In conclusion, plaintiff asserts that the administrative law judge's decision is supported by substantial evidence and that the Appeals Council's decision, the final decision of the Secretary, is not.

It is a well established rule that although a trial examiner's findings may not be ignored, his findings are not binding upon the agency he serves. *Peterson v. Gardner*, 391 F.2d 208, 209 (2d

Cir. 1968). As Plaintiff suggests, the findings of the trial examiner are entitled to great weight when they rest on credibility determinations, and cannot be rejected by the agency if the overriding factual matters relied upon by the agency are not impressive. *Dolan v. Celebrezze,* 381 F.2d 231, 233 (2d Cir. 1967). Here, however, unlike the situation in *Nichols v. Cohen,* 290 F.Supp. 207 (S.D. Ill.1968), cited by plaintiff, the credibility of the witnesses appears to have been of less significance in the administrative law judge's decision than was the conflicting medical evidence. It will be remembered that the administrative law judge had before him two x-ray reports, one showing no pneumoconiosis present, and one showing findings "compatible with pneumoconiosis, P 1/O." Likewise, there was in the record before him reports of two pulmonary function studies, one indicating an $FEV_1$ value above the table level, the other indicating $FEV_1$ and MVV values entitling plaintiff to the interim presumption of total disability due to pneumoconiosis. It may be presumed that this conflicting medical evidence prompted the Appeals Council's decision to review the decision of the administrative law judge. The notification of this action by the Appeals Council clearly indicated that that body wished to obtain additional medical evidence. The additional medical evidence was obtained, of course, by virtue of Dr. Gaziano's examination of plaintiff on January 22, 1974. His report bearing the same date has been summarized earlier herein. That report, particularly the x-ray (which, of course, was reread by Dr. Passes) and ventilatory function studies, was clearly more consistent with the previous evidence indicating that pneumoconiosis was not present than with the August 1973 x-ray and pulmonary function studies to the contrary. Unlike the situation in *Sosna v. Celebrezze,* 234 F.Supp. 289 (E.D.Pa.1964), there is no indication here that the Appeals Council utilized extra-record material, and the violation of the Administrative Procedure Act and of due process requirements found to exist in *Sosna* are not present in this action.

It must be reiterated that the Court's function is not to try this matter *de novo,* but to determine whether the Secretary's decision is supported by substantial evidence. For the reasons stated herein, the Court is of opinion that there is substantial evidence to support the final decision of the Secretary, and accordingly it is

Ordered that defendant's motion for summary judgment be, and the same is hereby granted; that plaintiff's cross-motion for summary judgment be, and the same is hereby denied; and that this action is hereby dismissed and retired from the docket.