Katherine CUSATIS

v.

**David MATHEWS, Secretary of Health, Education & Welfare.**

**Civ. A. No. 75–634.**

United States District Court, E. D. Pennsylvania.

Jan. 9, 1976.

---

James S. Palermo, Hazleton, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

This is a so-called "black lung" case arising under the Federal Coal Mine Health and Safety Act of 1969, as amended in 1972. 30 U.S.C. § 901 et seq. Before the Court are cross motions for summary judgment filed by the plaintiff and defendant respectively.

The defendant's brief contains an excellent statement of the law, and pertinent regulations. Prior opinions of this and other courts have dealt at length with the applicable statutory provisions and regulations promulgated pursuant thereto. We shall not repeat them here except to note that our duty is limited to determining whether the findings of the Secretary are supported by substantial evidence. This is the test under the Social Security Act, 42 U.S.C. § 405(g) and (h), as incorporated into the Coal Mine Health and Safety Act, 30 U.S.C. § 923(b). The burden of proof

here rests upon the plaintiff to prove that she was the widow of the deceased and dependent upon him at the time of his death, that she has not remarried, that he was entitled to benefits at the time of his death or that he died before January 1, 1974, due to pneumoconiosis or was at that time totally disabled due to pneumoconiosis. 30 U.S.C. § 921(a); 20 C.F.R. 410.210. It is undisputed that plaintiff was the decedent's widow and dependent upon him at the time of his death, that he died prior to January 1, 1974, and, therefore, was not entitled to benefits at the time of his death. It is also undisputed that the decedent's death was not the result of pneumoconiosis. According to the death certificate he died at work on November 13, 1944, as a result of a pulmonary thrombosis. True the death certificate was prepared and signed by a coroner who was not a physician. However, it is the only evidence as to the cause of death. The decedent was never the subject of lung studies either at or prior to the time of his death.

Although obviously suffering for years from the symptoms of pneumoconiosis and/or anthracosilicosis, otherwise described as "black lung", a condition resulting from almost fifty (50) years' employment in the anthracite mines, he did not, according to the best and only evidence of record, die from that condition, but rather suffered a sudden death in the mines as a result of a pulmonary thrombosis. That he obviously suffered a pneumoconiosis does not establish that he suffered a "complicated" pneumoconiosis and, accordingly, the plaintiff can only prevail by establishing that the decedent, at the time of his death, was *totally disabled* from pneumoconiosis or a respirable disease presumed to be pneumoconiosis.[1]

Thus, we are brought face to face with the crucial issue in this case—was the decedent totally disabled at the time of his death. The record clearly establishes that he worked with regularity until the date of his death when he died in the mines as the result of an embolism. The plaintiff testified:

"Q. Well, he passed away, on November 13, 1944, according to the death certificate. That was a pretty busy period. That was during the war. The mines was relevantly busy at the time.

A. Yeah, it was, I mean it's so long, you know, I can't remember a lot of things.

Q. Yes, I know it's a long time ago, but do you recall whether he worked on Saturday's ever?

A. I think so.

Q. There might have been some weeks in which he did work six days?

A. Yeah.

Q. But you also say that he did take—

A. He took time off—

Q. Did he take time off every week or just—

A. No. Like every two weeks he'd take two days off."

Such work record, to and including the date of his death, precludes a finding that the decedent was totally disabled at and prior to the date of his death, even assuming that he suffered a pneumoconiosis, a fact not medically established on this record. We recognize that "black lung", so called, is insidious and progressive, a disease sometimes subjecting its victim to years of suffering, inconvenience and partial disability. When and at what stage of a victim's life it becomes *totally* disabling varies with the tolerance and ability of the individual to cope with its effects and remain functional. To his credit the decedent re-

1. In suggesting that the decedent "obviously" suffered a pneumoconiosis, we rely upon the obvious symptoms suffered by the decedent as described by the various lay witnesses. The medical fact has *not* been established on this record because of the absence of medical treatment, the complete absence of medical records and the death of decedent's family physician.

mained functional and regularly employed until suddenly struck down from an unrelated cause. His tenacity may well have resulted from his desire to support his family, to remain a wage earner and to meet his responsibilities in an era (1944 and prior thereto) when government-subsidized social programs had not reached every conceivable handicap and disability; an era when it was not always fashionable to seek out and receive government benefits even when available. The memories of the great depression made sweet the opportunity for employment even at the risk of some physical discomfort. Whatever his motivations, the decedent did work with regularity until the day he died. He was not totally disabled from pneumoconiosis or otherwise. The administrative law judge did not err and the Secretary's motion for summary judgment will be granted.

In passing it should be noted that plaintiff's counsel left no stone unturned and presented all available evidence in plaintiff's behalf. However, our respect for the professional efforts of counsel and our empathy for the plaintiff cannot substitute for the lack of evidence of decedent's total disability. Moreover, the administrative law judge conducted a full and fair hearing and did so with restraint, understanding and apparent judicial demeanor.

The plaintiff's motion for summary judgment will be denied and a similar motion filed by the defendant will be granted.

