Mabel **LLOYD**

v.

David **MATHEWS**, Secretary of Health, Education & Welfare.

Civ. A. No. 74–3331.

United States District Court, E. D. Pennsylvania.

April 27, 1976.

Anthony J. Miernicki, Shenandoah, Pa., for plaintiff.

Kenneth A. Ritchie, Asst. U. S. Atty., Philadelphia, Pa., for HEW.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

This is an appeal from a final decision by the Secretary of HEW denying a widow's claim for black lung survivor benefits under the Federal Coal Mine Health & Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972. 30 U.S.C. § 901 et seq. Following the usual practice in such cases, the parties have filed cross-motions for summary judgment, and the plaintiff has moved in the alternative to remand for further consideration. As required by law, the Secretary has attached to his Answer a certified transcript of the record below which includes all testimony, exhibits, and other evidence upon which his decision was based.

My review of these materials persuades me that the Secretary's decision is not supported by substantial evidence.[1] Accordingly, the plaintiff's motion for remand will be granted, and the cross-motions for summary judgment will be denied.

The plaintiff is an elderly woman whose claim for black lung survivor benefits has been under review at one or another level of HEW for more than six years. Her original application, filed in 1970, was denied. After the statute was amended and liberalized in 1972,[2] Mrs. Lloyd renewed her

---

1. Judicial review of black lung cases is authorized by the statute, 30 U.S.C. § 923(b), as amended, which incorporates by reference the "substantial evidence" rule followed in Social Security cases, 42 U.S.C. § 405(g). If the Secretary's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate," *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971), it must be sustained, even if the record also discloses "substantial evidence" in support of the opposite result. *Koski v. Weinberger,* 401 F.Supp. 990 (N.D.W.Va.1975). This does not mean that the Secretary may coast to affirmance on merely a slender thread of supporting evidence, for " 'substantial' means just that," *Hess v. Secretary of HEW,* 497 F.2d 837 (3d Cir. 1974). The black lung benefits statute is avowedly remedial, and the Secretary is under a corresponding duty to effectuate the policy of the Act by, among other things, assisting the claimant where necessary in order to develop a meaningful and fair record. *Hess v. Secretary of HEW, supra.*

2. As originally enacted, the statute provided for survivor benefits only in cases where the miner had died of pneumoconiosis (black lung disease). One effect of the Black Lung Amendments of 1972 was to expand coverage to in-

application and it was reconsidered, as were other previously-denied claims. Again, it was denied. The review process culminated in a hearing before an Administrative Law Judge at which the plaintiff was assisted by counsel. The plaintiff and her sister were the only witnesses. Documentary evidence submitted at the hearing included the deceased miner's death certificate, work records, affidavits from fellow miners, and the plaintiff's divorce decree from a second marriage. Also received and made part of the transcript was the Social Security Administration's file on plaintiff's claim, consisting of her various applications and statements of claim and notices of prior determinations made at earlier stages of administrative review.

The success of the plaintiff's claim hinges on strictly lay proof of the physical condition of a man who died more than thirty years ago. Her late husband, Edward Phillips, was a coal miner for many years who died in a hit-and-run automobile accident in 1941 at the age of 44. No medical evidence has survived which might corroborate the family's contention that at the time of his death this man was suffering from an advanced and debilitating case of black lung disease.[3]

The burden is on the plaintiff to prove that her late husband, at the time of his death, was totally disabled by black lung disease (or, considering his length of employment in the coal mines, by a chronic or severe lung ailment which the Secretary may presume to have been black lung). 20 C.F.R. § 410.210(e)(2).[4] Under the statute and implementing regulations this may be done in three ways.

The first route is to qualify, if possible, under the Secretary's interim adjudicatory rules, 20 C.F.R. § 410.490. These establish a rebuttable presumption that a deceased miner was totally disabled by pneumoconiosis at the time of his death, if there is medical evidence, in the form of a chest x-ray, biopsy, or autopsy report, which confirms the existence of simple pneumoconiosis in the miner's body. Alternatively, where the miner was employed in the coal mines for at least fifteen years, a claimant may proceed under the presumption if she produces ventilatory studies which verify the presence of a "chronic respiratory or pulmonary disease" meeting certain durational requirements. The burden then shifts to the Secretary to rebut the presumption with evidence that the miner was not totally disabled at the time of his death, i.e., was performing (or was physically capable of performing) his "usual mine work or comparable and gainful work." 20 C.F.R. § 410.490(c)(1), (2).

The interim rules' presumption is generous, but it does not arise in the absence of specified medical evidence, which the plaintiff here has been unable to produce. Lay testimony about the miner's physical condition will not suffice to invoke the presumption. *McConville v. Weinberger*, 394 F.Supp. 1194 (W.D.Pa.1975), affd., 530 F.2d 964 (3d Cir.1976).

Likewise, Mrs. Lloyd cannot qualify for the irrebuttable presumption of total disability due to pneumoconiosis which is set forth in the statute at 30 U.S.C. § 921(c)(3) and in the Secretary's permanent rules at 20 C.F.R. §§ 410.418 and 410.458. This presumption arises only upon medical proof— stricter than that demanded by the interim rules—that the deceased miner was afflicted by severe, or "complicated" pneumoconiosis. Obviously a claimant who is unable to

clude survivors of miners who, at the time of their death from other causes, were totally disabled by pneumoconiosis.

3. There was no autopsy, nor was Mr. Phillips, during his lifetime, the subject of chest x-ray studies or biopsies. His personal physician is dead, and his medical records are lost.

4. There are two alternative conditions for eligibility, both inapposite here. One is to show

that the deceased miner was eligible for black lung benefits at the time he died. 20 C.F.R. § 410.210(e)(1). Plaintiff's husband died many years before the enactment of this statute and could not have been eligible for its benefits. The other alternative is to prove that the miner died of black lung disease. 20 C.F.R. § 410.-210(e)(2). The record establishes without doubt that the miner in this case died of injuries sustained in a car accident and not from black lung or any other respiratory ailment.

furnish medical evidence even of simple pneumoconiosis cannot proceed under § 921(c)(3) and its counterpart provisions in the permanent rules. *Zirkle v. Weinberger,* 401 F.Supp. 945 (N.D.W.Va.1975).

The plaintiff's final alternative is to prove by whatever evidence she can muster, including lay testimony, that (1) her late husband, at the time of his death, suffered from black lung disease or, at the very least, a "severe lung impairment" (20 C.F.R. § 410.414[b][4]) or "chronic respiratory or pulmonary impairment" (§ 410.414[c]), which (2) rendered him totally disabled within the meaning of the Act. 30 U.S.C. § 923(b); 20 C.F.R. §§ 410.414, 410.422, 410.426, 410.454.[5] On this track of the statute, where the claimant is forced to proceed without the benefit of any favorable presumption on the issue of total disability, the Secretary must consider all the facts of the case and "other relevant evidence" besides medical or physical performance data. Lay testimony from the widow and other persons with knowledge of the deceased minor's physical condition is of crucial importance here and must be given due weight by the finder of fact.

When the plaintiff married Edward Phillips in 1921, he was already working as a coal miner, having served a stint in the Army. He had very little formal education and no specialized job training; all his working life he was a miner. The employment records are sketchy, but they do indicate that Mr. Phillips worked as a miner for the East Bear Ridge Coal Company from 1924 to 1939.[6] Mrs. Lloyd's present recollection is that her husband worked at the East Bear Ridge Colliery until mid-1941. (The Administrative Law Judge assumed, as I will, that Phillips did work fulltime for a mining company, either East Bear Ridge or another, through part of 1941). Shortly before his death, Phillips either quit or was laid off from his mining job, because, according to the plaintiff, he was no longer physically able to do his work. From there he went briefly to work in an independent, or "bootleg", mine with several other men, thinking "maybe it would be easier on him but it wasn't" (Tr. 48). Two or three weeks later, Phillips left the bootleg hole, unable to keep up. He went with his family to seek a "little light job" in Philadelphia, where they had relatives (Tr. 50). On the way back from this trip, which was unsuccessful, he was struck and killed by a hit-and-run car.

At the hearing the plaintiff and her sister testified about Edward Phillips' physical condition during the last few years of his life. According to them, he exhibited the classic symptoms of what is known to its victims and their families as "miner's asthma." He "coughed a lot and he spit up black" (Tr. 37). He could not climb stairs, and slept on the first floor of his house, propped up with pillows. His lips and nails turned blue, and he lost weight (Tr. 37, 38, 44). He "changed from a young man to an old man" (Tr. 63). He could not walk more than half a block without having to stop for five or ten minutes to catch his breath (Tr.

---

5. These provisions are designed to ease the survivor's burden of proof on the issue of whether the deceased miner had black lung disease, but do not lighten her burden on the companion issue of total disability. 20 C.F.R. § 410.414(b)(4), for instance, applies where the deceased miner worked for "many years" in the coal mines. The Secretary agrees that in view of Edward Phillips' long employment as a coal miner his widow is entitled to proceed under this section and need only prove the existence of a severe lung impairment rather than pneumoconiosis *per se.* Defendant's Brief at p. 10. Alternatively, she can show by "other relevant evidence," *supra,* that her husband suffered from a "chronic" respiratory impairment, under § 410.414(c).

6. Exhibit 4 (Tr. 77), obtained from union files, lists Phillips as having worked for the East Bear Ridge Coal Co. from 1924 to 1939. Social Security records (Tr. 78) reflect his employment there only for the years 1932–34. Affidavits from fellow miners (Tr. 79–81) establish that Phillips worked at the East Bear Ridge Colliery at least from 1928 through 1937, and one affiant confirms the 1924–1939 figure. Assuming that Phillips left East Bear Ridge in 1939, there is a two-year gap in employment history on which subject his widow shows a significant degree of confusion (Tr. 46–50). We do know, however, that Phillips worked steadily, if not fulltime, as a miner either for a coal company or in the bootleg hole, until a few weeks before his death.

43–44). He often complained of chest pain (Tr. 55), and went once a week to a doctor who prescribed medicine for his breathing problem and advised him to "get out of the mines" (Tr. 48). He gave up hunting, driving, and all physical exercise and recreation, and could not work fulltime. Where once he had worked six days a week in the mines, he was forced to stay home several days a week towards the end of his life (Tr. 51–53). On the job, he was unable to do his share of the work and relied on his friends to help him get by (Tr. 48). The plaintiff and her sister testified that they each were personally familiar with the ravages of black lung disease; their brothers were coal miners and died of miner's asthma (Tr. 58, 64–65). Both affirmed that Edward Phillips was a victim of miner's asthma, and that his physical condition deteriorated significantly in the last two years of his life. In the following exchange with the Administrative Law Judge, the plaintiff's sister, Mrs. Ida Briggs, was asked to describe Edward Phillips' cough:

"Q Did you ever see him choke from his cough?

"A Well he would cough very hard but then I'd get up and walk out of the room because I, it was terrible.

" * * *

"Q Now, how long ago, how long did you reside in the anthracite area?

"A All my life.

"Q Did, uh, did you know people who were miners?

"A I had brothers that was miners and they died from miner's asthma.

"Q Did you see your brothers die?

"A I saw them.

"Q Did you see them in the last stages of their lives?

"A Yes, I did.

" * * *

"Q And based upon your knowledge and observations of Edward Phillips and your knowledge and observations of memories of your own family, would it be your opinion that Edward Phillips, prior to the time that he was killed with, uh, in this automobile accident, was suffering from a severe case of miner's asthma?

"A Oh sure he was. He'd have died anyhow shortly after. And I'd rather, well, it's a shame to say I'd rather see him killed because he'd died—

"Q In other words, ba—

"A —outright, but if he'd of had to suffer—

"Q —based on your observations you—

"A Yeah

"Q —you would say he probably wouldn't have lived long anyway?

"A That's right. That's right." (Tr. 64–65)

The Administrative Law Judge made no specific finding of fact on the question of whether the plaintiff's late husband suffered either from black lung disease or from a "chronic respiratory impairment," but based on the evidence summarized above, I hold that the plaintiff has carried her burden of proof on this issue. There is absolutely no basis in the record for a contrary finding.

The sole remaining issue is whether Edward Phillips was "totally disabled" by his lung condition at the time of his death. This must be determined from "all the facts of [the] case," with special emphasis on the severity of the miner's medical condition, his age, education, and work experience. 20 C.F.R. § 410.422(c). There are, in addition, two formal prerequisites for a finding of total disability. One is durational and plainly has been met in this case. 20 C.F.R. § 410.412(b)(2). The other is that the miner's lung ailment must have prevented him from engaging either in his usual mine work or in comparable and gainful work "in the immediate area of his residence," 20 C.F.R. § 410.412(b)(1). The crucial time to be examined in this case is the space of several weeks immediately preceding the miner's death. Whether he worked three days a week or six days a week a month before he died is not controlling if, in the space of those final weeks, his physical condition deteriorated to the extent that he became "totally disabled." We must recog-

nize, as another Court in this District recently pointed out, that black lung disease

"is insidious and progressive, . . . sometimes subjecting its victim to years of suffering, inconvenience and partial disability. When and at what stage of a victim's life it becomes *totally* disabling varies with the tolerance and ability of the individual to cope with its effects and remain functional." *Cusatis v. Mathews,* 405 F.Supp. 619, 621 (E.D.Pa., 1976) (emphasis in original).

The Administrative Law Judge found that Edward Phillips was not totally disabled at the time of his death. In support of this pivotal conclusion he stated only that, "[t]he evidence of record and the testimony are insufficient . . ." and that "[t]he lay evidence is not convincing. . . ." (Tr. 9) The only other portions of the hearing decision which could possibly relate to the finding are the Administrative Law Judge's observation that Edward Phillips "was engaged until shortly before his death in a bootleg mining operation for his own account with several other partners for a short time" (Tr. 10) and his characterization of the witnesses' testimony to the effect that at the time of his death Phillips "was looking for outside work" (Tr. 9). The

first of these comments, though true, does not state an adequate basis for a finding that the miner was not totally disabled, for, as noted above, the critical period on the facts of this case is the span of several weeks between the time he left the mines and the date of his death.[7] The second observation suggests, erroneously, that the deceased miner was actively seeking outside work, when, in fact, the evidence was that he lay at home, too ill to work at all, and made only one attempt—which was unsuccessful—to obtain light, parttime work in another part of the state. The statute and regulations require a determination of whether the deceased miner was capable of engaging in comparable and gainful work "in the immediate area of his residence." If the plaintiff's testimony is to be believed, it is difficult to imagine a case more squarely within the meaning of this standard.

■ That is the crux of this case: the Administrative Law Judge, in his own words, found the plaintiff's evidence to be "not convincing" on the issue of total disability. He gave no reason for disbelieving the testimony of the plaintiff or her sister, nor did he confront them at the hearing with his skepticism and give them an opportunity to refute his doubts or to explain away what the Secretary now characterizes as "conflicts" in the evidence.[8] An Admin-

7. Even if the deceased miner was working in the mines at the time of his death the inquiry would not end there, for the Administrative Law Judge must also determine whether the miner's work pattern, at that stage, was sporadic, marked by poor work performance or marginal earnings. *Dellosa v. Weinberger,* 386 F.Supp. 1122, 1126 (E.D.Pa.1974). In the absence of medical evidence on total disability, the Administrative Law Judge must give careful consideration to the lay evidence and not rely simply on the fact that the miner "worked" shortly before or even up to the time of his death. *Corridoni v. Weinberger,* 402 F.Supp. 983 (M.D.Pa.1975).

8. See Defendant's Brief at pp. 11–12. For example: the plaintiff stated at one point in her testimony that Phillips "quit" East Bear Ridge Colliery, at another that he was "laid off." The Administrative Law Judge made no effort to pin this down, which, if he intended to rely on the "contradiction" to support a denial of benefits, he should have done. The Secretary also points to the plaintiff's testimony that her husband's fellow miners used to help him with his

tasks at the East Bear Ridge Colliery because he was too ill to work satisfactorily on his own. This "conflicts," I am told, with the affidavits of Phillips' fellow miners, which fail to mention that they helped him out on the job. It is plain to me that these affidavits were solicited in order to document Phillips' tenure as a coal miner (a prerequisite for various favorable presumptions contained in the Act and implementing regulations), and not to corroborate minute details of the plaintiff's testimony. The hearing decision does not suggest that the Administrative Law Judge considered this a contradiction or, if he did, that it was a basis for his decision to deny the claim. Assuming, however, that it did figure in his decision, the plaintiff first should have been given the opportunity to solicit additional affidavits from these people to clarify the purported contradiction. A number of other minor discrepancies in the record stem from statements made by the plaintiff in early correspondence with HEW, at a time when she was not represented by counsel. If the Secretary intends to rely on any or all of these "conflicts" his decision must take

istrative Law Judge is not required to believe the testimony of interested witnesses, even if not contradicted, *Rennar v. Weinberger*, 399 F.Supp. 1301, 1304 (E.D.Okl. 1975), but he has a correlative duty to make a specific finding of fact to that effect, *Baerga v. Richardson*, 500 F.2d 309 (3d Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975). He also has an obligation, in this non-adversary proceeding, to solicit testimony or steer the claimant to do so, if need be, in order to clarify the record on critical points. *Hess v. Secretary of HEW*, 497 F.2d 837 (3d Cir. 1974). *Hess* involved a Social Security claimant who was not represented by counsel at his hearing. It seems to me that its holding is equally applicable where, as in this case, the claim turns upon the credibility of elderly lay witnesses whose memories of specific, long-past events is understandably clouded and confused (see Tr. 46–50). The Federal Coal Mine Health & Safety Act of 1969, as amended, contains no statute of limitations to bar claims such as this which arose many years ago. It is, on the contrary, a remedial and essentially compassionate statute which is designed to compensate miners or their survivors, however imperfectly or late, for the ravages of black lung disease. Where the passage of time makes it difficult for a claimant to establish eligibility and forces her to rely almost exclusively upon her own memory of her husband's physical condition and degree of disability, the Secretary in my judgment has a special duty of care to avoid a hypertechnical or insensitive approach to the evidence, lest a meritorious claim be denied through inadvertence or an inadequate record.

This matter will be remanded, with instructions to the Administrative Law Judge first, to reconsider the evidence already before him and second, if need be, to make additional inquiry into the facts surrounding Edward Phillips' physical condition and work pattern at the time of his death, *i.e.*, the period of several weeks between the time he left the bootleg mine and the date of the fatal accident. Had his health deteriorated to such an extent that he was unable to engage either in his usual mining work or comparable and gainful employment in the vicinity? Was he physically capable of working, even in the mines, but only on a sporadic, marginal basis? These and other issues must be resolved and made the subject of specific findings of fact before the Secretary's decision can meet the "substantial evidence" test of judicial review. If, upon reconsideration of the plaintiff's claim, the Administrative Law Judge remains unconvinced, he must marshal the evidence in support of that conclusion. The record as it stands today is not adequate for that purpose.

The cross-motions for summary judgment are denied, and the plaintiff's motion for remand is granted, for further proceedings in accordance with the views expressed in this opinion. An appropriate Order will be filed.

them into account and contain specific findings of fact referable to them. Otherwise his decision will defy meaningful review. *Baerga v. Richardson, supra.*