**Mrs. Joan ROMANOT**

v.

**David MATHEWS, as Secretary of Health, Education and Welfare.**

Civ. A. No. 75–2619.

United States District Court,
E. D. Pennsylvania.

July 2, 1976.

---

Antony Miernicki, Shenandoah, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Philadelphia, Pa., Paul Holl, Asst. U. S. Atty., for defendant.

## MEMORANDUM OPINION AND ORDER

A. LEON HIGGINBOTHAM, District Judge.

John P. Romanot, a coal miner, died in October, 1970. After his death his surviving widow filed a claim for black lung survivor's benefits under the Federal Coal Mine Health and Safety Act (hereafter "Act"), as amended by the Black Lung Benefits Act of 1972. 30 U.S.C. § 901 et seq. After a hearing, the Administrative Law Judge, in April, 1975, denied Mrs. Romanot's claim for benefits, and, in July, 1975 that decision became the final decision of the Secretary of Health, Education and Welfare (hereafter "Secretary"), when it was adopted by the Appeals Council. Mrs. Romanot is plaintiff in this action seeking review of the Secretary's denial of her claim for benefits.

The gravamen of the dispute [1] between the Secretary and the plaintiff is whether the latter has satisfied her burden of proof by demonstrating either that her husband died from pneumoconiosis or, that the deceased was totally disabled due to pneumoconiosis at the time of his death. Both parties to this dispute have filed cross-motions for summary judgment.

On the basis of the entire record and the briefs filed in support of the parties' respective motions, the Court finds that the plaintiff's motion for summary judgment is without merit. The Court further finds that the defendant's motion for summary judgment is meritorious, and therefore, is GRANTED.

The facts surrounding the decedent's death are easily summarized. John P. Romanot, according to his work records, was employed as a truck driver in a strip mine from January, 1951 through February, 1962. The plaintiff testified that the deceased had previously worked in a coal mine from 1946–1947. Mr. Romanot stopped working in 1962, and in November, 1963 the Social Security Administration determined that he was totally disabled because of chronic brain syndrome and a cerebral thrombosis (Tr. 69, 70). Mr. Romanot was

1. It is undisputed that: (1) the deceased worked in the coal mines in excess of 10 years; (2) the plaintiff is John Romanot's unremarried widow who was dependent upon the deceased for her support during the period required to establish eligibility for survivor's benefits under the Act; (3) the deceased has one surviving child living with the plaintiff; and (4) the deceased died prior to January 1, 1974 and, therefore, was not entitled to black lung benefits at the time of his death.

hospitalized on several occasions prior to his death.

The medical evidence submitted at the administrative hearing consisted of: (1) the considered opinions of five physicians, with varying degrees of specialized practice, on what, if any, evidence of pneumoconiosis was revealed by the three chest x-rays taken of the decedent in 1963, 1966 and 1970; and (2) the testimony and medical report of Dr. John Mika. The chest x-ray taken in May, 1963 was interpreted by Dr. Mulligan, a radiologist. Dr. Mulligan concluded that Mr. Romanot's lung fields evidenced no sign of active lung disease (Tr. 77). A second x-ray, taken in 1966, was interpreted by Dr. Barclay, a general practitioner. After noting a slight elevation of the left leaf of the deceased's diaphragm, having nothing to do with black lung disease, Dr. Barclay concluded that the chest x-ray was "otherwise not remarkable" (Tr. 79). The third chest x-ray, taken in March, 1970, was read by three different physicians. Dr. Bohnenblust, a radiologist, concluded that the x-ray was negative for active lung disease (Tr. 83). Another radiologist, Dr. Fink, determined that the same x-ray showed pneumoconiosis category 0/1 (Tr. 85). Finally, Dr. Furnary, a radiologist certified as a "B" reader of coal miners' chest x-rays by the National Institute of Occupational Safety and Health of the Public Health Service, reread and reclassified the x-ray as showing pneumoconiosis category 0/0 (Tr. 87).

Dr. Mika, a general practitioner who treated the deceased miner on an intermittent basis for seven years, submitted a report to the Social Security Office in 1972. The doctor specifically stated in his report that:

I know this will upset Mr. Romanot's widow, but in all honesty, all his chest films (at least 4 over a 7 year period) were all normal.

He was disabled, but it was due to

1) chronic brain syndrome secondary to cerebral arteriosclerosis

2) gouty arthritis

3) severe hypertension (Tr. 94).

Dr. Mika stated that he was preoccupied with his patient's cerebral condition, as were the other physicians interpreting the x-rays, so that the chest x-rays were taken quickly and were not carefully read for evidence of black lung disease. Dr. Mika contended, after becoming aware of Dr. Fink's report, that Mr. Romanot's clinical history was consistent with a finding of black lung disease.

The death certificate, signed by a coroner without a license to practice medicine, stated that the cause of the miner's death was cerebral thrombosis and that death was sudden (Tr. 97). No contributing cause of death appeared on the certificate. No autopsy was performed (Tr. 53).

The plaintiff also testified at the administrative hearing. She stated that her husband complained of shortness of breath and began coughing, gagging and spitting up in 1962 (Tr. 32–33). Mr. Romanot's sleep was disturbed by his continuous cough (Tr. 34). Although formerly active around the house, the plaintiff stated that after 1962 her deceased husband was unable to do any household tasks because of shortness of breath and wheezing (Tr. 27–28). The deceased miner had great difficulty climbing stairs or even walking level ground without experiencing shortness of breath (Tr. 28, 33). Mr. Romanot also suffered with constant wheezing, swollen ankles and night sweats (Tr. 36).

 This Court, in reviewing a decision of the Secretary, must determine whether the denial of black lung survivor's benefits in this case is supported by "substantial evidence" contained in the administrative record. "Substantial evidence" is such relevant evidence as a reasonable person might accept to support the conclusion that Mrs. Romanot is not entitled to black lung survivor's benefits. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If the Secretary's decision is supported by substantial evidence it must be sustained by this Court, even if the administrative record contains substantial evidence in support of the opposite result. *Koski v. Weinberger,* 401 F.Supp. 990 (N.D.W.Va.

1975); *Lloyd v. Mathews*, 413 F.Supp. 1161, at 1162 n. 1 (E.D.Pa.1976) (Fullam, J.).

The Act and the implementing regulations provide several alternative routes by which a widow can satisfy her burden of proof and establish a right to black lung benefits: (1) by meeting the requirements of the interim adjudicatory rules appearing in 20 C.F.R. § 410.490 (creating a rebuttable presumption of total disability due to pneumoconiosis at the time of death); (2) by establishing, through chest x-rays, biopsies, autopsies or similar diagnostic techniques, the existence of complicated pneumoconiosis in accordance with 20 C.F.R. § 410.418 (thereby creating an irrebuttable presumption of total disability due to pneumoconiosis at the time of death); [2] (3) by satisfying the general criteria for determining total disability appearing in 20 C.F.R. §§ 410.414, 410.426, 410.454, 410.456, 410.462.

■ In this case the deceased miner never underwent either a ventilatory function study or a biopsy. No autopsy was ever performed. Consequently, the only way in which the plaintiff could qualify for benefits under the interim adjudicatory rules is through production of a chest x-ray which established the existence of pneumoconiosis; lay testimony on the deceased miner's symptomatology would not satisfy the requirements of this particular regulation. *McConville v. Weinberger*, 394 F.Supp. 1194 (W.D.Pa.1975), *aff'd*, 530 F.2d 964 (3d Cir. 1976).

■ Plaintiff regards Dr. Fink's interpretation of the deceased miner's 1970 chest x-ray (pneumoconiosis subcategory 0/1), as sufficient to establish the presence of totally disabling pneumoconiosis. However, the regulations promulgated by the Secretary specifically provide that a chest x-ray classified under either subcategory 0/1 or 0/0 (the latter being Dr. Furnary's reading of Mr. Romanot's 1970 chest x-ray) is not accepted as evidence of pneumoconiosis. 20 C.F.R. § 410.428.

■ If a deceased miner was employed in the coal mines for a period of 10 years or more, and died of a respirable disease, a rebuttable presumption arises under the permanent rules that the miner's death was a result of pneumoconiosis. 30 U.S.C. § 921(c)(2) (app. 10a); 20 C.F.R. 410.462(a). A widow of a deceased miner only has to prove that her husband died of a respirable disease.

■ In this case, the medical evidence indicates that death was due, not to a chronic dust disease or another chronic disease of the lung, but rather the result of a cerebral thrombosis. Although the death certificate was completed by a coroner without medical training, that fact does not preclude a finding by the Administrative Law Judge that the cause of death was that stated therein. See *Cusatis v. Mathews*, 405 F.Supp. 619, at 621 (E.D.Pa.1976) (Troutman, J.). Unlike the factual situation in *Cusatis v. Mathews*, here the cause of death appearing on the death certificate was verified by the deceased miner's physician, Dr. Mika. Although Dr. Mika's testimony and earlier-submitted medical report vary in emphasis, both ultimately confirm that cerebral thrombosis was the cause of death (Tr. 55–56). Despite a statement to the effect that a lung or pulmonary condition may have played a "significant role" in causing Mr. Romanot's death, the doctor finally concluded that the cause of death was cerebral thrombosis and not pneumoconiosis or any lung disease (Tr. 55–56).

■ In addition, the Administrative Law Judge, as the trier of fact, is entitled to weigh the evidence of record and to give more credence to some of Dr. Mika's statements as compared with others. *Richardson v. Perales, supra*, 402 U.S. at 399, 91 S.Ct. 1420, Dr. Mika's earlier report of the deceased's physical problems, did not include any mention of black lung disease, but identified chronic brain syndrome secondary to cerebral arteriosclerosis as the predominant disabling disease. That report is consistent with Dr. Mika's final conclu-

2. The plaintiff does not contend that her deceased husband died from anything other than simple pneumoconiosis. Therefore, 20 C.F.R. § 410.418 is irrelevant in this case.

sion that the deceased died from cerebral thrombosis. Furthermore, while Dr. Mika testified that a respiratory ailment such as pneumoconiosis or emphysema may bear some relationship to cerebral thrombosis, he could not report that such a linkage was explored in the case of this deceased miner. Dr. Mika also was unable to report that "pneumoconiosis or emphysema causes a high instance of cerebral thrombosis" (Tr. 55). This case is analogous to the fact situation in *Perlinsky v. Weinberger*, Civil No. 74–1503 (E.D.Pa. February 28, 1975) *aff'd*, 523 F.2d 1051 (3d Cir. 1975). In *Perlinsky* a treating physician expressed his opinion that pneumoconiosis or anthracosilicosis played a significant factor in the miner's demise and that the respiratory illness "accelerated" the miner's death. The Court concluded:

> Although it is conceivable that a fact finder could conclude from such testimony that decedent died from a respiratory disease, rather than the automobile accident, thus obtaining the benefit of the rebuttable presumption that death was caused by pneumoconiosis, there is certainly substantial evidence that the cause of death was the automobile accident, and not pneumoconiosis or anthracosilicosis. A reading of the record certainly confirms the Secretary's finding that "the evidence overwhelmingly establishes that the miner's death was . . . [due to] . . . an automobile accident."

▮▮▮ *Perlinsky v. Weinberger, supra,* at 4. Similarly, although it is conceivable that a fact finder could conclude, after listening to plaintiff's testimony [3] about her husband's symptoms of pneumoconiosis from 1962 until his death, that death was caused by pneumoconiosis, a reading of the record overwhelmingly supports the Secretary's conclusion that death was the result of cerebral thrombosis. See also *Bickelman v. Weinberger*, Civil No. 74–2855 (E.D.Pa. July 3, 1975), at 4 (Fullam, J.). Lay testi-

mony is "just one of several factors that must be weighed together with the medical evidence." *Statzer v. Weinberger*, 383 F.Supp. 1258, 1261 (E.D.Ky.1974). Furthermore, the Administrative Law Judge is not required to believe the testimony of an interested witness, even if not contradicted. *Rennar v. Weinberger*, 399 F.Supp. 1301, 1304 (E.D.Okl.1975).

Even if Mr. Romanot's death was caused by multiple factors, *i. e.* by both pneumoconiosis and cerebral thrombosis, those diseases were separable. In other words, Dr. Mika was able to identify which disease caused death. There is no evidence that the decedent died of a cerebral thrombosis secondary to pneumoconiosis or some other chronic dust or lung disease. Therefore, plaintiff's attempt to satisfy her burden of proof in accordance with the regulation appearing in 20 C.F.R. § 410.462(b) is to no avail. *White v. Weinberger*, 399 F.Supp. 268, 270–271 (W.D.Va.1975); see *Butliewicz v. Weinberger*, 413 F.Supp. 520 (E.D.Pa. 1976) (Ditter, J.).

▮▮▮ In denying survivor's benefits in this case, the Secretary was obviously persuaded by the following factual considerations: (1) there was no medical evidence to support a diagnosis of pneumoconiosis or other pulmonary or respiratory impairment, other than the varying testimony of Dr. Mika; (2) the physical and x-ray examinations of the deceased miner's chest, conducted in 1963, 1966 and 1970, revealed no significant abnormalities; and (3) the deceased miner was never treated by a doctor for his respiratory difficulties despite his numerous hospitalizations and intermittent contact with Dr. Mika over a seven year period.

Finally, it is evident from the administrative record that the deceased was totally disabled at the time of his death. However, as in *Campbell v. Weinberger*, 402 F.Supp. 1147, 1152 (Va.1975), "a miner may be determined to be totally disabled due to pneumoconiosis only if that disease is the *primary* reason for his inability to engage in

---

3. The Administrative Law Judge specifically noted the plaintiff's testimony in evaluating the evidence submitted at the hearing (Tr. 11).

comparable gainful work. Medical impairments other than pneumoconiosis may not be considered." See 20 C.F.R. § 410.426. The overwhelming medical evidence in this case shows that the decedent was precluded from engaging in comparable gainful work by cerebral thrombosis, the disease that primarily concerned Dr. Mika, as well as the deceased miner's other treating physicians.

The plaintiff's motion for summary judgment is DENIED; the Secretary's motion for summary judgment is GRANTED.